Argued June 11, writ allowed June 26, 1917.

BENSON *v.* WITHYCOMBE, GOVERNOR.

(166 Pac. 41.)

**Statutes—Construction—Enactment by Same Legislature.**

1. Where statutes relating to the same subject have been favorably acted upon by the requisite majorities in each house of the same legislative assembly, all the clauses of the several enactments should be construed together, so as to permit each to remain intact, unless some provision is so repugnant to succeeding sections that both cannot exist at the same time as substantive law, in which case the later one necessarily controls.

**Highways—Bond Issues—Statutes.**

2. Laws 1917, Chapter 423, Section 8, subdivision 5, providing that the funds with which to pay the portion of the expense of construction of post roads and forest roads payable by the state, under its agreement with the federal government, made by Laws 1917, Chapter 175, Section 1, accepting the provisions of Act of Congress, July 11, 1916, Chapter 241, Section 1 (39 Stat. 355, U. S. Comp. Stats. 1916, § 7477a), shall be secured by the sale of bonds, "as is provided in House Bill No. 21" (Laws 1917, c. 175), applies exclusively to the sale by the State Board of Control, and not by the state highway commis-

sion, of such evidences of indebtedness, no part of which can be made up from the $6,000,000 to be raised by issuing bonds for the amount.

**Statutes—Repeal by Implication.**

3. Repeals by implication are not favored, but where two statutes are so repugnant that both cannot stand, the later necessarily operates as an implied repeal of the earlier.

[As to repeal of statutes by implication, see notes in 14 Am. Dec. 209; 88 Am. St. Rep. 271.]

**Highways—Statutes—Amendment.**

4. Laws 1917, Chapter 423, Sections 11, 12, providing that the State Highway Commission shall pay the interest on state bonds issued for highway purposes from any funds subject to its control, etc., and that the money received from motor license fees, after the payment of certain expenses, shall be expended under the jurisdiction of the State Highway Commission in payment of the interest and principal of the bonded indebtedness of the state contracted for road purposes under the provisions of Laws 1917, Chapter 175, accepting the offer of the federal government made by act of Congress July 11, 1916, to furnish money for post roads, has impliedly amended all the preceding enactments relating to the construction, operation, and maintenance of state highways and the issuance of funds therefor.

**Highways—Sale of State Bonds—Duty of Board of Control—Statutes.**

5. Where, after the State Highway Commission complied with Laws 1917, Chapter 237, Section 13, and set aside sufficient funds to meet payments specified in the order, no money remained in the state highway fund with which to match the federal appropriation for post and forest roads offered by act of Congress of July 11, 1916, and accepted by Laws 1917, Chapter 175, the sale of state bonds in an amount sufficient to raise enough money to meet the appropriation for the year devolved on the State Board of Control.

Original proceeding in Supreme Court.

In Banc.    Statement by MR. JUSTICE MOORE.

The plaintiffs, S. Benson, W. L. Thompson and E. J. Adams, as the State Highway Commission, instituted in this court a proceeding against the defendants, James Withycombe, Ben W. Olcott, and Thomas B. Kay, the Governor, Secretary of State, and State Treasurer, respectively, as the State Board of Control, to compel them to issue and sell state bonds. An alternative writ of *mandamus* having been issued states in effect that pursuant to the act of Congress of July 11, 1916 (39 U. S. Stat. 355), the provisions

of which were accepted by the legislative assembly of Oregon (Gen. Laws Or. 1917, Chap. 175), there have been duly set apart for the year 1917 to aid in the construction of rural post roads $236,062.11 and to help in building roads and trails $255,905, amounting to $491,967.11, which sum will lapse unless Oregon furnishes a like donation during that period to assist in such work; that various counties of the state taking advantage of Chapter 237, Gen. Laws Or. 1917, have provided for raising large sums of money to secure parts of such federal aid within their borders, and have requested the plaintiffs definitely to locate and establish the grades of highways within such *quasi* municipalities, thereby necessitating an outlay of funds subject to plaintiffs' control approximating $173,140, and to operate and maintain highways already constructed will require, during the year 1917, a further expenditure by the plaintiffs of about $71,450, amounting to $244,590, while there is on hand as the state highway fund only $238,535.58 with which to meet the payment of such obligations; that in order to obtain the first installment of such federal aid, and thus prevent its ultimate loss, it is necessary for Oregon immediately to raise the sum of $491,967.11 by issuing and selling state bonds requisite for that purpose; that to procure such an amount the plaintiffs at a regular meeting of the State Highway Commission adopted a resolution directing its chairman to demand of the defendants, as the State Board of Control, an issue and sale of state bonds as required by Chapter 175; that complying therewith such chairman notified the defendants, as such board, of the amount of money required from the state during the year 1917, and demanded that they issue and sell state bonds suffi-

cient to raise the amount specified, but they declined and refused to comply with such request or to take any action in the matter.

A demurrer was interposed to the alternative writ on the ground that it did not state facts sufficient to warrant the granting of the relief demanded.

DEMURRER OVERRULED.
PEREMPTORY WRIT ISSUED.

*Mr. George M. Brown,* Attorney General, and *Mr. Isaac H. Van Winkle,* Assistant Attorney General, for the demurrer.

*Mr. Jay Bowerman, contra.*

MR. JUSTICE MOORE delivered the opinion of the court.

In addition to these facts parts of statutes are set forth in the alternative writ which plaintiffs' counsel maintain require a compliance with the terms of such command. The defendants' counsel admit the facts hereinbefore stated, but deny that the provisions of the law invoked authorize the granting of a peremptory writ. The solution of the question thus presented must depend upon the construction to be given to several statutes enacted at the session of the legislative assembly held in the year 1917, relating to the raising and disbursing of public funds for road purposes. Considering these matters in the order of their approval Section 1 of Chapter 175 accepts the provisions of the act of Congress referred to, and agrees to cooperate with the Federal Government in carrying the clauses thereof into effect. Chapter 339, Gen. Laws Or. 1913, created a State Highway Commission, com-

posed of the Governor, Secretary of State and State Treasurer, and required the State Tax Commission annually to levy a tax equal to one fourth of a mill on each dollar of assessable property, which exaction was to be known as the "state road fund." Section 2 of Chapter 175, Gen. Laws Or. 1917, which legislative session without again mentioning it will be understood unless some other term is expressly stated, commands the state board having control of public highways, out of the money called the highway funds, annually to set aside a sufficient sum to comply with the terms of the federal act,

"and if there is any deficiency in said highway fund for such purpose, then the State Board of Control of the state of Oregon is hereby authorized, empowered, and directed each year during the next five years to sell the bonds of the state of Oregon in an amount sufficient to raise enough money which, taken together with any money available from appropriations from other funds of the state of Oregon, if any there be, to equal the amount required of the state of Oregon in order to fully meet the requirements, conditions, and provisions of said Federal statute, and the Federal officials operating under said statute; *provided, however,* that such bonds shall not be issued unless necessary to enable the state of Oregon to avail itself of the Federal aid as provided hereinabove, or any other aid hereafter furnished by the United States."

A part of Section 4 of that chapter reads:

"After the funds, if any, which have been appropriated from the current moneys of the state for the purpose of meeting the requirements of this act have been exhausted, or if no appropriation therefor has been made, then each year said State Board of Control shall sign, date, issue, and sell bonds as required to raise funds sufficient to meet the obligation of the

state of Oregon in carrying on road construction as provided for in said Federal statute.''

This act contained an emergency clause and went into effect February 16, 1917, upon its approval.

Though the ''State Highway Commission'' and the ''state road fund'' as designated in Chapter 339, Gen. Laws Or. 1913, are respectively referred to in Section 2 of Chapter 175 as ''the state board, commissioners, or officers having control of the state highways'' and the ''highway funds,'' no mistake could possibly arise in construing the latter phrases as indicating a legislative intent to specify the former expressions.

Chapter 194 requires the Secretary of State annually to issue to owners of motor vehicles licenses permitting the use of such carriages, the amount of the demand depending upon the kind, power, and weight of the vehicle. The money so received must be turned over to the State Treasurer and known as ''the motor vehicle fund.'' Upon deducting therefrom certain charges the remainder is required to be returned to the treasurers of the counties from which the payments were received. This chapter further provides, however, that if the state of Oregon accepts the benefits of the federal appropriation for the construction of post and forest roads, the remainder of the motor vehicle fund, after retaining the necessary expenses, shall on December 31st of each year, while such aid is available, be paid over to the board, commission, or person entitled to disburse it. This act will go into effect August 1, 1917.

Chapter 237 creates a State Highway Commission, pursuant to which statute the plaintiffs were duly appointed and now hold their offices, and an engineer and other employees are also provided for, who col-

84 Or.—42

lectively are designated as the State Highway Department. Section 12 of that chapter practically reenacts Section 13 of Chapter 339, Gen. Laws Or. 1913, by requiring the State Tax Commission annually to levy one fourth of a mill tax upon all assessable property, which burden is known as the state highway fund, and all moneys thus obtained are to be disbursed by the State Highway Commission. This act contained an emergency clause and went into effect February 19, 1917, upon its approval.

Section 1 of Chapter 423 empowers the State Highway Commission, during the next five years, to sell bonds of the State of Oregon to the amount of $6,000,000, the money derived therefrom to be used to construct public highways, of which sum not more than $1,000,000 can be used during the year 1917. A part of subdivision 5 of Section 8 of that chapter reads:

"The funds with which to pay the portion of the expense of construction of said post and forest roads payable by the state of Oregon, shall be secured from the sale of bonds as is provided in House Bill No. 21 (chapter 175)."

This act was approved by the Governor so far as was necessary in order to refer it to the people to be voted upon June 4, 1917, at which special election it was ratified, and, thereupon, went into full force and effect. These references and excerpts are believed sufficient, with others hereinafter to be mentioned, to explain what parts, if any, of Chapters 175, 194, and 237 were changed or abrogated by subsequent enactments, and particularly by Chapter 423.

1. These statutes having been favorably acted upon by the requisite majorities in each house of the same legislative assembly all the clauses of the several

enactments should be so construed together as to permit each to remain intact, unless some provision is so repugnant to succeeding sections that both cannot exist at the same time as substantive law, in which case the later one necessarily controls: *Smith* v. *Kelly,* 24 Or. 464 (33 Pac. 642); *State* v. *Linn County,* 25 Or. 503 (36 Pac. 297); *Grant* v. *Paddock,* 30 Or. 312 (47 Pac. 712); *Stoppenback* v. *Multnomah County,* 71 Or. 493 (142 Pac. 832); *Richards* v. *District School Board,* 78 Or. 621 (153 Pac. 482).

It will be remembered that Section 2 of Chapter 175, *supra,* requires the officers having charge of the state highways first to set aside out of any money annually received in the highway fund a sufficient amount to comply with the terms of the federal appropriation, and if there be any deficiency in that fund to match such donation, the State Board of Control is directed annually, for five years, to sell the bonds of the state in an amount sufficient to raise enough money which with other available funds will equal the amount required, but such bonds shall not be issued unless necessary to enable the state to avail itself of present or future federal aid. When that chapter was enacted there was a "motor vehicle fund," which was collected by the Secretary of State, who after the payment therefrom of certain expenses turned over the remainder December 31st of each year to the county treasurers of the several counties of the state: Chapter 299, Gen. Laws Or. 1913. That statute had an emergency clause and went into effect February 16, 1917, upon its approval; and this being so it remains to be seen what alterations, if any, were subsequently made to Section 2 thereof. It will be borne in mind that Chapter 194 imposed upon owners of certain carriages licenses, the money to be derived there-

from to be received by the Secretary of State and known as "the motor vehicle fund," which on December 31st of each year was to be turned over to the State Treasurer, who, while Chapter 175 accepting the benefits of the federal aid remains in force, is required to pay the same to the board, commission, or person having charge of the state highways. It will thus be seen that Section 2 of Chapter 175 was thereby impliedly amended by adding to the one-fourth mill tax, known as the "state road fund," the money thereafter to be obtained from the motor vehicle fund, but no part thereof is available for that purpose until December 31, 1917:

Section 7 of Article II of Chapter 237 makes it incumbent upon the State Highway Engineer to furnish county courts of the various counties of the state, without expense to such counties specifications relating to the construction and maintenance of public highways, and upon application therefor he is required to cause such roads or any part thereof to be definitely located and their grades to be permanently established, the cost thereof to be charged on the books of the State Highway Department as a part of the expense of construction. Section 13 of the article last referred to requires the State Highway Commission to set aside from the "highway fund," consisting of the one-fourth mill tax, amounts of money sufficient (1) to meet the payment of salaries and expenses of the State Highway Department, (2) to cover the costs of operating and maintaining state highways which have been constructed or improved, (3) to match the federal appropriation, the remainder, if any, to be used for the purposes of that enactment. The reservation of these several amounts impliedly amended Section 2 of Chapter 175 by deducting from the one-

fourth mill tax levied for state road purposes the various sums so to be set aside in the order stated.

In this condition of the statute last mentioned Chapter 423 having received the requisite majority votes of both branches of the legislative assembly was submitted to and ratified by the people at a special election held June 4, 1917.

Section 11 of that chapter declares:

"The State Highway Commission shall pay the interest upon said bonds as the same shall become due, from any funds subject to its control, from whatever source the same may come, and the payments upon the principal of said bonds, as the same shall become due, shall be paid by the State Highway Commission from any funds within its control, without regard to the origin of said funds."

Section 12 thereof provides:

"Any surplus or unexpended balance of the fees received under the operation of House Bill No. 509 (chap. 194, creating the 'motor vehicle fund') * * remaining after the payment of all claims incurred in carrying out the provisions thereof * * shall be transferred * * to an account to be expended under the jurisdiction of the State Highway Commission in payment of the interest and principal as the same shall become due upon bonded indebtedness of the state of Oregon, contracted for road purposes under the provisions of this act or the provisions of said House Bill No. 21 (chap. 175)."

It will be observed that this section expressly sets aside the "motor vehicle fund" to the payment of interest on bonded indebtedness of the state, and hence no part of the money so to be obtained can be applied to make up the fund required to match the federal appropriation.

It is conceded that the highway department will be obliged to pay during the year 1917, in locating, at

the request of counties, state highways, establishing their grades, and submitting specifications for their construction as required by Section 7, Chapter 237, $173,140, and that the operation and maintenance of highways already constructed, as demanded by Section 13 of that Chapter, will require a further outlay of $71,450, amounting to $244,590, while there is in the state treasury as the proceeds collected in the year 1917 for the one-fourth mill tax, known as the "state highway fund," only $238,535.58. The members of the legislative assembly were undoubtedly aware of this condition and evidently anticipated its possible recurrence for a period of five years during which the federal appropriation was available. In order to meet the requirements of such donation and to match it with an equal appropriation for the furnishing of which the faith of the state is pledged (Section 5, Article II, Chapter 237), and not to trench upon any of the money to be raised by the issue and sale of the $6,000,000 bonds, or to take any part of the "motor vehicle fund," the money derived from which latter source is set apart for the payment of the bonded indebtedness of the state incurred for highway purposes, subdivision 5 of Section 8 of Chapter 423 declares:

"The funds with which to pay the portion of the expense of construction of said post roads and forest roads payable by the state of Oregon shall be secured by the sale of bonds as is provided in House Bill No. 21 (chap. 175)."

The bonds to be issued pursuant to the provisions of Section 2, Chapter 175, were required to be sold by the State Highway Commission, which then consisted of the Governor, Secretary of State, and State Treasurer: Chapter 339, Gen. Laws Or. 1913. Section 4 of

Chapter 423, in referring to the $6,000,000 bonds, reads:

"The State Highway Commission (the plaintiffs herein) shall provide such method as it may deem necessary for the advertisement of each issue of said .bonds before the same are sold, and shall also require such deposit with bids as may be required, and generally shall conduct the sale and issuance of said bonds under such rules and regulations not inconsistent with this act as shall be adopted by said commission."

2. Construing in *pari materia* this section in connection with subdivision 5 of Section 8 of that Chapter will show that the latter clause governing "the sale of bonds as is provided in House Bill No. 21 (Chap. 175)" directs that the sale of the bonds to be issued to match the federal appropriation shall be made by the Governor, Secretary of State, and State Treasurer instead of by the plaintiffs herein as in the case of the $6,000,000 bonds. The phrase, therefore, "as is provided in House Bill No. 21," employed in subdivision 5 of Section 8 of Chapter 423, applies exclusively to the sale by the State Board of Control, and not by the State Highway Commission, of such evidences of indebtedness, no part of which can be made up from the $6,000,000 to be raised by issuing bonds for that amount.

The conclusion we have reached is strengthened by the negative argument of C. E. Spence, Master of the State Grange, and others, who, at page 34 of the pamphlet published and sent out by the Secretary of State to the voters prior to the election held June 4, 1917, opposing the ratification of Chapter 423, said:

"Section 8 of the bill provides that the bonds provided for in the Bean (the author of the measure) bonding bill (chap. 175) to be issued only in case of an emergency, shall under House Bill 550 (chap. 423)

be issued and the proceeds thereof be placed in the state treasury to be expended by the State Highway Commission. Then it is not a six million dollar bond issue, but a seven million, nine hundred thousand dollar bond issue."

Our deduction is further fortified by a communication from Mr. J. D. Brown of the Farmers' Union opposing the ratification of Chapter 423, *supra,* published June 2, 1917, in the "Oregon Voter," a magazine printed weekly at Portland, Oregon, and devoted to the advancement of every material interest that tends to promote the general welfare of the state. From the article referred to the following excerpt is taken:

"On June 4 the people of Oregon will have an opportunity to decide whether they favor issuing bonds to the extent of $6,000,000 for the purpose of paving about 400 miles of scenic highways in the state. At the same time will be decided whether bonds to the extent of $1,800,000 provided in the Bean bill (chap. 175, *supra)* shall be issued to pay the interest on the $6,000,000 issue for the first five years these bonds are to run. Thus we will vote for or against the issuing of $7,800,000 of state bonds."

3. The rule is settled that repeals by implication are not favored: *Bower* v. *Holliday,* 18 Or. 491, 496 (22 Pac. 553); *Winters* v. *George,* 21 Or. 251, 257 (27 Pac. 1041); *Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642). Where, however, two statutes are repugnant so that both cannot stand, the later enactment will necessarily operate as an implied repeal of the earlier law: *Strickland* v. *Geide,* 31 Or. 373, 376 (49 Pac. 982); *In re Booth's Will,* 40 Or. 154, 156 (61 Pac. 1135, 66 Pac. 710); *Cunningham* v. *Klamath Lake R. Co.,* 54 Or. 13, 20 (101 Pac. 213, 1099). Applying these legal principles to the statutes under consideration Section

12 ·of Chapter 237, providing for the levy of one-fourth mill tax, to be known as the "state highway fund," declares that "all moneys in said fund shall be at the disposal and subject to the use of said commission (the plaintiffs herein) for the purposes of this act." The next section it will be remembered imposes upon the highway commission the duty to apply this fund to the disbursement of matters heretofore enumerated; and the remainder being subject to the control of the State Highway Commission must be applied in payment of interest upon state bonds issued for highway purposes: Section 11, Chapter 423. But if interest be due on state bonds the third item of such fund, or so much thereof as may be necessary, must be devoted to the payment of such interest.

4. By Section 12, Chapter 423, the money received from motor vehicle license fees, after the payment therefrom of certain expenses, is wholly dedicated to the payment of the interest and principal of the $6,000,000 bonds. In these particulars Chapter 423 has impliedly amended all preceding enactments relating to the construction, operation, and maintenance of state highways and to the issuance of funds therefor.

5. It will be kept in mind that the alternative writ states in effect that after the plaintiffs, complying with the provisions of Section 13 of Chapter 237 had set aside sufficient funds to meet the payment thus specified in the order designated, no money remained in the "state highway fund" with which to match the federal appropriation, and that for the year 1917 $491,967.11 was necessary for that purpose.

There can be no reasonable doubt that the sale of state bonds in an amount sufficient to raise enough money to meet that appropriation for the year specified devolves upon the defendants, the performance

of which the law specially enjoins as a duty resulting from an office: Section 613, L. O. L. The alternative writ states facts sufficient to authorize an award of the relief demanded, and this being so the demurrer is overruled. As the entire question so far as it relates to matching the federal appropriation was here presented it follows that a peremptory writ should be issued, and it is so ordered.

<div align="right">

Demurrer Overruled.

Peremptory Writ Issued.