Argued July 3, affirmed July 29, 1924.

## W. C. WINSLOW *v.* I. N. FLEISCHNER ET AL.

(228 Pac. 101.)

**Constitutional Law—Legislative Act not Declared Void, Unless Decision Necessary.**

1. Supreme Court will not declare a legislative act void, unless necessary to a proper disposition of the case under consideration.

**Statutes—Statutes Enacted at Same Legislative Sitting must be Construed Together.**

2. Laws of 1921, pages 86, 267, relating to the preservation of game animals and fish, being enacted at same legislature, must be construed together.

---

See 12 C. J., § 212; 27 C. J., § 9 (1926 Anno.); 36 Cyc., pp. 1099, 1147, 1151.

**Statutes—Conflicting Statute Subsequently Approved will Prevail Over Prior Act.**

3. As Laws of 1921, page 267, was approved seven days later than Laws of 1921, p. 86, relating to preservation of game animals and fish, it will prevail over former enactment, if they are in irreconcilable conflict.

**Game—Order of Commission Held Only to Suspend Statute.**

4. Order of game commission under Laws of 1921, page 89, Section 8, closing open season for deer with horns, does not repeal Laws of 1921, page 267, declaring an open season on such animals, but is merely a suspension thereof.

**Game—Statute Held Repealed by Implication.**

5. Laws of 1921, page 267, declaring an open season on deer with horns, repeals by implication that part of Laws of 1921, page 86, attempting to empower game commission to close any open season or open any closed season.

**Constitutional Law—Game—Order of Commission Closing Open Season, Held Legislation.**

6. Order of game commission under Laws of 1921, page 89, Section 8, closing the open season for deer with horns, *held* to constitute legislation; such statute containing no provision declaring state of facts upon occurrence of which game commission may close any open season, and conferring upon commission an arbitrary power to substitute its will for that of legislature.

**Statutes—Suspension of Statute is a Legislative Act, Unless Based on Contingency, Declared by Legislature Sufficient to Warrant Suspension.**

7. Suspension of a statute is a legislative act, unless based upon some contingency, declared in legislative enactment to be sufficient to warrant suspension by an executive or administrative body whose duty it is to execute or administer law suspended.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit instituted to enjoin placing in effect an alleged void order of the defendants who constitute the game commission of the state, and the prosecuting attorneys of Douglas and Marion Counties, respectively. The part of the order attacked is as follows:

"That for the purpose of protecting certain species of the wild game life of the state from extermination, and for the purpose of propagating and increasing such species of wild game as hereinafter mentioned,

the State Game Commission of the State of Oregon hereby gives notice that the open season for hunting, shooting, killing, taking or having in possession, alive or dead, male deer with horns throughout the entire state of Oregon, as defined in section 2, chapter 153, General Laws of Oregon, 1921, shall be and is hereby declared to be closed for the year 1924.

"Notice is also given that the State Game Commission of the State of Oregon hereby declares an open season for the hunting, killing and taking of male deer with horns throughout the entire state of Oregon. Said open season shall be and is hereby declared to be from the tenth day of September, 1924, to the thirty-first day of October, 1924, both dates inclusive."

Two questions only are presented by this appeal, namely,—First, whether or not the order in question is authorized by law; and, second, whether or not the law authorizing such order attempted to delegate legislative powers and is therefore unconstitutional.

AFFIRMED.

For appellants there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Miles H. McKey,* Assistant Attorney General, with an oral argument by *Mr. McKey.*

For respondent there was a brief and oral arguments by *Mr. W. C. Winslow* and *Mr. William H. Trindle.*

COSHOW, J.—1. There is no doubt that the order complained of is in harmony with the second paragraph of Section 8, Chapter 66, General Laws of 1921. The defendants contend that under the authority of *Winslow* v. *Fleischner et al.,* 110 Or. 554 (223 Pac. 922), the order is valid. The contention is that the case above cited rules that the game commission is authorized by said Section 8 to close any one season.

But we do not think that is the proper construction of the court's opinion in that case. Following the thoroughly established practice of this court, we would not declare an act of the legislature void, unless such a declaration was necessary to a proper disposition of the case under consideration. We did rule that, assuming the statute to be valid, the order there assailed was not authorized by the statute.

The instant case presents squarely for determination the validity of the portion of said Chapter 66 referred to above.

2. The same legislature which enacted said Chapter 66, Laws of 1921, also enacted Chapter 153, Laws of 1921, relating to the subject matter of preserving and protecting game animals and fish. These two statutes must be construed together: 2 Lewis' Sutherland on Statutory Construction (2 ed.), 844, 845, § 443; 25 R. C. L. 1062; *Stoppenback* v. *Multnomah County*, 71 Or. 493, 509 (142 Pac. 832), and cases there cited.

"It is to be observed that in the comparison of different statutes passed at the same session or nearly at the same time this circumstance has weight; for it is usually referred to as indicating the prevalence of the same legislative purpose, as rendering it unlikely that any marked contrariety was intended. But whether the prior statute is recent or of long standing it must yield if there is a conflict." 2 Lewis' Sutherland on Statutory Construction (2 ed.), 845, §§ 443–448.

3. Chapter 66 was approved February 14, 1921, and Chapter 153 seven days later. If there be any irreconcilable conflict beteen the two, the latter will prevail over the former: 1 Lewis' Sutherland on Statutory Construction, 461, § 247; *Benson* v. *Withycombe*, 84 Or. 652, 658, 659 (166 Pac. 41), and cases there cited.

4. By Chapter 153, it is lawful to kill deer with horns from August 20th to October 20th in District No. 1, and from September 1st to October 31st in District No. 2 of *each year*. The order assailed declared that the open season is closed for the year 1924 for the entire state. It in effect closes the open season for the year 1924. This is not a repeal of the statute, but is a suspension thereof: 1 Lewis' Sutherland on Statutory Construction (2 ed.), 459, § 246. The order continues by prescribing an open season for the year 1924.

The act of February 14, 1921, Chapter 66, Section 8, attempts to empower the game commission with power to

"close any open season or open any closed season in any county or district for the shooting or angling of any kind or species of game fish, game animals, fur-bearing animals, game birds or non-game birds for such time as the state game commission may designate."

The act of February, 1921, Chapter 153, Section 10, among other things, provides:

"It shall be lawful within the state of Oregon to hunt * * deer with horns, from August twentieth to October twentieth of each year."

5. There appears to be an irreconcilable conflict between the two statutes because the same act or course of conduct cannot be both lawful and unlawful at the same place and time and under the same circumstances. Chapter 153, therefore, repealed by implication, that part of Chapter 66 attempting to empower the game commission to close any open season or open any closed season.

6, 7. We also conclude that the order of the game commission assailed is legislation. No condition,

contingency, exigency, or state of facts is mentioned or referred to in justification of the order either as it suspends the operation of the statute, or enacts a closed season for 1924. Chapter 66 contains no provision declaring the state of facts upon the occurrence of which the game commission may close an open season. The language of the statute would confer an arbitrary unqualified power upon the commission to substitute its will for that of the legislature. The suspension of a statute is a legislative act unless based upon some condition, contingency, exigency or state of facts, declared by the legislative enactment to be sufficient to warrant the suspension by an executive or administrative body whose duty it is to execute or administer the law suspended.

The power to delegate legislative functions is discussed in Lewis' Sutherland on Statutory Construction (2 ed.), pp. 148–170, §§ 89–101. Numerous cases are there analyzed and discussed illustrating what is and what is not a delegation of legislative function.

"Legislative power is delegated contrary to the maxim stated when the legislature attempts to confer on others a power of substantive legislation, to be exercised independently or in connection with the legislature, or when it constitutes an inferior legislature or law-making body. At the same time it is necessary for the legislature to confer more or less of discretion upon executive and administrative officers in applying a law and carrying it into effect, and in many cases it is expedient to vest in such officers more or less of power to make rules and regulations for the *purpose of applying and executing the law.* It is, perhaps, impossible to lay down any general rule by which it may be certainly and readily determined whether such a law is or is not an unlawful delegation of legislative power. 1 Lewis' Sutherland on Stat. Con. (2 ed.), 149.

"The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority and discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter, no valid objection can be made." *State* v. *Burdge,* 95 Wis. 390 (70 N. W. 347, 60 Am. St. Rep. 123, 37 L. R. A. 157).

The case of *United States* v. *Grimaud,* 220 U. S. 506 (55 L. Ed. 563, 31 Sup. Ct. Rep. 484, see, also, Rose's U. S. Notes), is a leading case on this subject. In page 520, official report, the opinion quotes with approval from *Field* v. *Clark,* 143 U. S. 649, 694 (36 L. Ed. 294, 12 Sup. Ct. Rep. 495) as follows:

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make its own action depend."

In the Grimaud case the rules and regulations complained of were made in conformity with and in subordination to a general law of Congress. There was no attempt to change, modify or suspend any part of the general law. In the instant case, the game commission asserts the authority to suspend the law, and enact a different law for a designated period of time. The case of *Light* v. *United States,* 220 U. S. 523 (55 L. Ed. 570, 31 Sup. Ct. Rep. 485, see, also, Rose's U. S. Notes), rules the same as the Grimaud case.

The case of *Brodbine* v. *Inhabitants of Town of Revere,* 182 Mass. 598 (66 N. E. 607), also involved

the validity of rules and regulations under a general statute. In page 609 of 66 N. E., the court says:

"This principle is analogous to that which marks a distinction between matters that are substantive and those that are incidental and subsidiary, in the cases which decide that parties cannot bind themselves by a contract to settle their controversies by arbitration out of court, although they may bind themselves by such a contract in regard to incidental matters, like the assessment of damages."

There is nothing in this case sustaining the contention that an executive or administrative officer may change the substance of a legislative enactment.

"An offense which may be the subject of criminal procedure must be an act committed or omitted 'in violation of public law, either forbidding or commanding it.' 4 Blackstone Com. 5 * *
"The definition of offenses, the classification of offenders, and the prescription of the punishment they shall suffer, are legislative, and neither executive or judicial functions." *United States* v. *11,150 Pounds of Butter,* 195 Fed. 657, 664 (115 C. C. A. 463).

The offense prescribed by said Chapter 153 is hunting during the closed season. The order assailed in this suit is an attempt by the game commission to define that offense by prescribing the closed season.

The case of *United States* v. *Antikamnia Chemical Co.,* 37 App. D. C. 343, cited by defendants, states the correct rule of law in the fourth syllabus, as follows:

"The power conferred to make regulations for carrying a statute into effect must be exercised *within the powers delegated;* that is to say, confined to details for *regulating the mode of proceeding* to carry into effect the law as it has been enacted by Congress; *and it cannot be extended to amending or adding to the requirements of the statute itself.*"

The article of Prof. John B. Cheadle of the University of Oklahoma, 27 Yale Law Journal, 892, and following, is a valuable contribution to the subject of the delegation by the legislature of legislative functions. But we have discovered no case sustaining a delegation of power to an executive or administrative body to amend or change a legislative enactment. The delegation of legislative authority sustained by the courts has always been such as was within and subordinate to the act or acts of the legislature covering the subject matter.

It is our opinion that the opinion in *Locke's Appeal*, 72 Pa. 491 (13 Am. Rep. 716), correctly states the law applicable to the instant case as follows:

"To assert that a law is less than a law, because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet fully developed, or to things future and impossible to know * * The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

In *Merchants Exchange* v. *Knott,* 212 Mo. 616, 641 (111 S. W. 565), we find the following:

"We are of the opinion that the power to bind and loose, to inaugurate or suspend the operation of the law, to say when and where it is law is of necessity an inherent and integral part of the law-making power, not to be delegated to, and wielded by, any commission."

*Boston* v. *City of Chelsea,* 212 Mass. 127 (98 N. E. 620); *Noel* v. *People,* 187 Ill. 587 (58 N. E. 616, 29 Am. St. Rep. 238, 52 L. R. A. 287, 289); *State* v. *Public Com.,* 94 Wash. 274 (162 Pac. 523); *Green* v. *State*

*Civil Service Com.,* 90 Ohio, 252 (107 N. E. 531). The decisions of this court are in harmony with the foregoing authorities.

"There is a large class of cases where the legislature may vest in administrative officers power to determine when particular cases do or do not fall within a competent rule established by the legislature. 6 R. C. L., pp. 176, 179." *Monroe* v. *Withycombe,* 84 Or. 328, 430 (165 Pac. 227).

To the same purport are *State* v. *Briggs,* 45 Or. 366 (77 Pac. 750, 78 Pac. 361, 2 Ann. Cas. 424); *Portland Fish Co.* v. *Benson,* 56 Or. 147, 154 (108 Pac. 122); *State* v. *Gates,* 104 Or. 112, 121 (206 Pac. 863). In the last case cited in page 122, it is ruled that—

"The legislature deliberately intended to vest the Fish Commission with power to extend the statutory closed periods for that part of the Willamette river which is north of the bridge."

It was also ruled in page 121, that—

"During the period prescribed by statute a stream is and must be at all events closed; for the commission is without power to shorten or abolish that defined period, although it is authorized to extend and lengthen that defined period *if conditions appear to warrant such extension.*"

This ruling is based on the following language of the Commercial Fisheries Code of Oregon, which is as follows:

"The fish commission is authorized by this act to propagate and stock the various streams of this state with salmon * * ; and for the purpose of protecting the same, the fish commission is hereby authorized to close to net fishing, or fishing for commercial purposes by any means, any stream, or any designated portion thereof, in this state frequented by salmon, * * , or any stream which it has stocked * * "

It thus appears that the Commercial Fisheries Code names the exigency upon which the fish commission must act in temporarily modifying by extending the closed season. A similar provision is in the first paragraph of Section 8 of Chapter 66 of General Laws of 1921, and reads thus:

"The state game commission is authorized by this act to propagate and stock the various waters of this state with trout and other game fishes; and for the purpose of protecting the same it is hereby authorized to close to fishing by hook and line, commonly called angling, or to restrict the bag limit that may be taken from any stream or lake, or any designated portion thereof."

The power thus conferred upon the game commission is not legislative, but that element of the power is incidental to the principal power conferred which is adminstrative. It would be useless and vain to stock a stream with fish without the power to protect them during the time they require protection. The power thus conferred does not override an act of the legislature, but is an enforcement of it, and in subordination to it. Such a delegation of power is conceded by all the authorities to be lawful. In the Gates case that power was not questioned and in page 114, we read the following:

"The defendant is not claiming that the legislature is without power to confer upon the Fish Commission authority to close a given stream against fishing; * * * "

The case of *Portland Fish Co.* v. *Benson,* above, rules the same as the ruling in the Gates case, and is based upon similar language in B. & C. Comp., § 4106.

The second paragraph of Section 8, Chapter 66, Laws of 1921, contains no condition, contingency, ex-

112 Or.—3

igency or facts upon the occurrence of which the game commission may change the open season. The game commission assumes to act under the authority attempted to be conferred in that paragraph. The power there attempted to be conferred on the game commission is unconditional and unqualified. Its language would authorize the game commission to substitute its judgment and will for that of the legislature. It is an attempt to delegate purely legislative power. That is the interpretation of that paragraph adopted by the game commission for the preamble of the order assailed in the instant case is as follows:

"Whereas, the State Game Commission of the State of Oregon is authorized under section 8, Chapter 66, General Laws of Oregon, 1921, to open any closed season or close any open season in any county or district of the State of Oregon for the hunting, shooting, killing, taking or having in possession, alive or dead, in whole or in part, of game animals and game birds; * * "

It thus appears that the game commission assumes the power to substitute its judgment about the proper time for the closed season for the year 1924 for the judgment of the legislature as expressed in Section 10, Chapter 153, Laws of 1921. The order assailed in the instant case is not subsidiary to the statute but is contrary thereto. The order is substantive legislation. The case of *Merchants Exchange* v. *Knott*, 212 Mo. 616 (111 S. W. 565), is an instructive case. The court there rules a part of the delegation of power valid and other parts invalid, giving sound reasons for the distinctions.

The order assailed in the instant case states that it is made

"for the purpose of protecting certain species of the wild game life of the state from extermination, and

for the purpose of propagating and increasing such species of wild game as hereinafter mentioned, * * "

But the legislature of the state fully legislated on the subject matter for those purposes in said Chapter 153. Said Section 8 of Chapter 66, Laws of 1921, does not mention those purposes or either of them as the exigency for conferring such power on the commission.

It is written in *Merchants Exchange* v. *Knott,* 212 Mo. 616, 637, 638 as follows:

"It is obvious that the foregoing grant of power is given without statutory landmark, compass, map, guide-post or cornerstone in one whit controlling its exercise or prescribing its channel, or indicative of any certain intendment of the legislature mind, beyond the mere grant. In essence it is the power of pure and simple despotism. Verily! he that looketh on such power to lust after it hath already committed a sin. in his own heart against the reign of law."

This language quite aptly describes the power attempted to be conferred by the second paragraph of Section 8, Chapter 66, Laws of 1921.

No case has been cited by defendants supporting such a delegation of legislative power. We have been unable to find a case going to that extent. Indeed, defendants concede that the legislature cannot delegate the power to legislate conferred upon it by the Constitution. It follows therefore, that the Circuit Court did not err in overruling the demurrer. The decree appealed from is affirmed and the injunction made permanent.                              Affirmed.

Bean, J., not sitting.