Submitted on briefs September 18, 1928, affirmed February 26, 1929.

EVA OVERLAND ET AL. *v.* E. L. JACKSON ET AL.

(275 Pac. 21.)

For appellants there was a brief over the name of *Mr. Neal R. Crounse.*

For respondents there was a brief over the name of *Mr. W. F. Magill.*

ROSSMAN, J.—This is an appeal from a decree and judgment of the Circuit Court in favor of the plaintiffs in a cause submitted on the pleadings and an agreed statement of facts. The following summary, we believe, fairly portrays the situation thus presented. One Julia E. Jackson, prior to her marriage to C. C. Jackson, had acquired the lands concerning which this cause was instituted. The plaintiffs are her children by a prior marriage; both are adults. Upon her death, in the year 1925, C. C. Jackson was appointed administrator of her estate, and later petitioned the County Court to set aside to him as a homestead the aforementioned property. The deceased, and the said petitioner, had made their home upon this land. September 24, 1925, the court made an order allowing the petition; thereupon, Jackson continued to live upon the premises, and claimed them as his own. August 11, 1927, he died, still claiming ownership of this land. The defendants, all adults, are his children by a previous marriage; they assert ownership of the property as his heirs. The rental value of the land is $15 a month. The decree of the Circuit Court was in favor of the plaintiffs; it held as void the order of

the County Court, and entered a judgment in plaintiffs' favor for $500, the stipulated rental value of the premises for the period it was withheld from them.

The defendants seek to uphold the order entered by the County Court by virtue of Section 1234, Or. L., as amended by 1923 Session Laws, Chapter 263. The plaintiffs rely upon Section 225, Or. L.

The law applicable to the situation presented 'to us appears more complex and difficult upon hasty examination than it resolves itself into upon mature reflection. Yet it is difficult to state the situation as simply as it deserves. Section 1234, Or. L., came into our laws as a part of the enactment of the Code of Civil Procedure of 1862. It there appears as a portion of Title IV, Chapter 15. Chapter 15 is entitled "Proceedings in Probate Matters," and Title IV bears the heading "The Support of the Widow and Minor Children." The first section under Title IV authorizes provision for the support of the widow and minor children "until administration of the estate has been granted and the inventory filed"; the next section, which is now codified as Section 1234, Or. L., subject to a few minor changes which we need not notice, grants authority to the court upon the filing of the inventory, to set apart to the widow or minor children "all the property of the estate by law exempt from execution." We shall review no further the enactments of 1862; the reference already made has served the purpose of calling attention to the fact that the legislative intent was not to determine the nature of the homestead, or define the extent of the exemption privilege, but to make provision for the support and maintenance of the widow and minor children. The

law thus remained until the 1919 assembly of our legislature (we shall later review the changes wrought at that session). However, until the 1919 Session, the Probate Courts, by virtue of the aforementioned enactments of 1862, set apart the exempt property, including the homestead, to the widow and minor children upon their motion. For an illustrative case see *Wycoff* v. *Snapp*, 72 Or. 234 (143 Pac. 902).

It will be observed that what is now Section 1234, authorizes the court to set apart to the widow or minor children "all the property of the estate, by law exempt from execution." Exempt property is vast in its variety; it includes the uniforms, arms, equipment and horses used by the militiamen in the National Guard; a burial lot, a quantity of books, pictures and musical instruments, $100 worth of wearing apparel, the tools, implements, team, library, etc. used in the earning of a living, $50 worth of fowl, $300 worth of livestock, family provisions, a quantity of fuel, a church pew, a pension, certain firearms owned by the citizen, all of the property of the state, county and city, the family homestead. Thus, it appears, that Section 1234 has application to a general class of property which includes not only a homestead, but also a variety of other articles ranging all the way from a library, to a coop, containing $50 worth of fowl.

After this had remained the law of this state for fifty-seven years (subject to a nonconsequential amendment to Section 1234, by 1919 Session Laws, Chap. 37, Art. II, § 2), the legislature saw fit to take the family homestead out from the general class of property dealt with by Section 1234, and deal with

it specially; it, therefore, enacted Chapter 112, Session Laws 1919. Sections 5 and 6 of this act are now respectively Sections 225 and 226, Or. L. 1920. This enactment concerns itself with homesteads only. Briefly summarized, its provisions may be stated thus: Section 1 creates a homestead exemption; Section 2, fixes the minimum size and value below which the homestead cannot be reduced upon execution sale; Section 3 provides, that mechanics and purchase price liens are superior to the exemption privilege; Section 4 defines the manner of claiming the exemption; Section 5, which is now Section 225, Or. L., makes provision for the descent of the homestead in accord with the laws of descent and distribution when its owner dies intestate; Section 6, which is now Section 226, Or. L., provides, that the owner may dispose of his homestead by testament. In each instance provided for by Sections 225 and 226, the recipient receives the benefit of the exemption privilege, provided he is related to the deceased within the degrees of consanguinity or affinity mentioned in those sections. The exemption privilege is subordinated only to mortgage and mechanics' liens, and to the expenses of the last sickness, funeral and probate charges. The act expressly "frees" the estate, thus passed, of all other "claims"; the provision just mentioned, is persuasive evidence, that the legislature intended that the order provided for in Section 1234 should no longer constitute any sort of claim upon the property. Thus it will be seen, that while Section 1234, Or. L., concerns itself with a vast variety of property, Sections 225 and 226, Or. L., are a part of a code which has reference to a specific type of exempt property, the homestead, and provide for its devolution in a manner

different than that indicated by Section 1234. Not only so, but they attach conditions, exactions and exemptions upon the estate in the possession of the new owner which are entirely different from that effected by Section 1234, Or. L. It was these circumstances which caused this court, in *Leet* v. *Barr,* 104 Or. 32 (202 Pac. 414, 206 Pac. 548), to rule thus:

"The provisions contained in these two sections are positive and imperative, and are not doubtful in meaning or ambiguous, and it is the duty of the court to give effect to them. These provisions are also particular, special and specific in their directions, and therefore would prevail over the general provisions contained in section 1234 O. L., if the two acts had been passed at the same time, as it cannot be supposed that the legislature would have inserted in sections 225 and 226 the special, particular and specific provisions contained therein if it had intended that the general provisions of section 1234 O. L. should control. If it were not for the provisions contained in sections 225 and 226, O. L., a homestead, being exempt from execution, would fall within the operation of section 1234 Or. L., and would be disposed of as other exempt property of an estate by being set apart as the separate property of the widow or husband of the deceased. The provisions of section 1234, Or. L., are wholly inconsistent with those of sections 225 and 226, and, if disposed of under one, a wholly different disposition of a homestead would be made than if disposed of under the other. In deciding which statute should prevail if both had been enacted at the same time, we would be compelled to follow sections 225 and 226, Or. L., because specific provisions relating to a particular subject must govern in respect to that subject as against general provisions in other parts of the law which might otherwise be broad enough to include it."

The decision concluded by holding that Sections 225 and 226 governed the devolution of the homestead.

1, 2. Should we deem it necessary to buttress the rules of statutory construction applied in the foregoing decision with citations from other jurisdictions, we could readily do so. We deem the conclusion reached in *Leet* v. *Barr, supra,* sound, and adhere to it. The statute construed is one that governs the title to real property; the decision once having been announced and applied, comes within the doctrine of *stare decisis,* and should not be lightly cast aside. Carpenter, Stare Decisis & Law Reform, VII Oregon Law Review, 31. Since we abide by it, the result is that Section 1234 confers upon the County Court, authority to issue an order setting apart for the husband, widow or minor children, all of the exempt property of the estate, except the homestead; the probate court is without authority to dispose of the latter because Sections 225 and 226 provide for a different disposition of it. As previously pointed out, these sections provide that if no will disposes of the homestead, it shall descend by virtue of the statutes of descent and distribution; but if the deceased left a will, and in it provided for the devise of his homestead, the devisee shall take it. As we have observed before, in each instance of death, either testate or intestate, the exemption privilege, which protected the owner during his lifetime, is transferred to his relative upon the latter coming into possession.

3. Thus the law was well settled up to the 1923 Session at least. Other of our decisions, which applied these statutes are *Iltz* v. *Krieger,* 104 Or. 59 (202 Pac. 409, 206 Pac. 550), *Ferguson* v. *Holborn,* 106 Or. 566 (211 Pac. 963), *Slattery* v. *Newell,* 115 Or. 22 (236 Pac. 268), and *Glover* v. *Glover,* 108 Or. 61 (215 Pac. 990).

The 1923 assembly of the legislature amended Section 1234: 1923 Session Laws, Chapter 263. This enactment consisted of the re-enactment of Section 1234, Or. L., in exactly its original phraseology; but it added the following:

" * * And that all orders heretofore made and entered of any court or judge thereof setting apart to any husband, widow or minor children of the deceased, any homestead under and by virtue of the provisions of section 1234, Oregon Laws, be and the same are hereby ratified, confirmed, validated and legalized in so far as such orders might or could have been lawfully made under the provisions of section 1234, Oregon Laws, the same being chapter 37 of General Laws of Oregon, 1919."

It will be observed that the addition consisted of a mere curative clause. It will be remembered that Sections 225 and 226, Or. L., became a portion of our laws in the 1919 session of the legislature; at the same session, what is now Section 1234 was slightly amended, the principal change consisting of adding the widower as an additional possible beneficiary of the probate court's order. The fact that what is now Section 1234 was thus enacted at the 1919 session, when Sections 225 and 226 came into our laws, received some comment in *Leet* v. *Barr;* the court there, in announcing its conclusion that Sections 225 and 226 prevailed over Section 1234, pointed out that Sections 225 and 226 were enacted at a later day in the legislative session than Section 1234, and assigned to that circumstance some persuasive effect. This portion of the decision in *Leet* v. *Barr* has caused the appellant to call our attention to the fact that Section 1234 has now achieved an enactment subsequent to Sections 225 and 226, through its re-enactment in the 1923 session. It is argued, that we should infer that

through its later re-enactment the legislature intended that Section 1234 should prevail over Sections 225 and 226. It would be odd if the legislature adopted such an unusual means for repealing, relegating, or impairing Sections 225 and 226. If such was the legislative purpose, a repealing statute would have been the proper instrumentality to apply upon Sections 225 and 226. If the legislative intent was to confer authority upon the probate court to set aside homesteads under the provisions of Section 1234, it could readily have accomplished its purpose by specifically mentioning the homestead. Since it did neither, but contented itself with the addition of a curative clause, we must assume that its intention was none other than to cure some titles affected by orders previously made under Section 1234.

As the situation now exists, the statement of the rules of statutory construction announced in *Leet* v. *Barr,* applicable to the apparent conflict of Sections 225 and 226 upon the one hand, and Section 1234 upon the other, remain as pertinent now as they were when that decision was announced. The sole and only question before us is whether the re-enactment of Section 1234 at the 1923 legislative assembly should cause us to depart from the result announced in *Leet* v. *Barr.* What we have already said will suffice to dispose of appellants' contention.

4. Before concluding it might be well to point out that there is still another rule of statutory construction, frequently applied in cases similar to ours, which may be stated thus: when a statute has been construed by the court of last resort of the state and is later re-enacted it is deemed that the legislature has adopted the court's construction unless the contrary

purpose is clearly shown by the language of the act: 25 R. C. L., Statutes, p. 1075, § 297; 36 Cyc., Statutes, p. 1152; Lewis' Statutory Const. (2 ed.), § 399. Sections 225, 226 and 1234, Or. L., and their precedents, have been construed and applied by this court many times. We have already mentioned *Leet* v. *Barr*. A companion case to it is *Iltz* v. *Krieger, supra*. Here the court held that inasmuch as the death of the original homestead owner occurred before the enactment of the 1919 act, the principles of law announced in *Wycoff* v. *Snapp.* 72 Or. 234 (143 Pac. 902), and in *In re Frizzell's Estate,* 95 Or. 684 (188 Pac. 707) should be applied, and that the homestead should be set aside to the widow under Section 1234, Or. L. Prompted by the rule of statutory construction just mentioned, we deem it proper to infer, that when the legislature embodied into 1921 Session Laws, Chapter 263, the precise words of Section 1234, Or. L., it intended that its words should be construed as we had construed them in the cases of *Leet* v. *Barr, supra,* and *Iltz* v. *Krieger, supra;* and this includes the inference that it intended that those words, as reenacted, should bear the same relationship to all existing law as they bore in their old form in Section 1234, Or. L.

There has been called to our attention 1927 Session Laws, Chapter 345. Neither side contends that this case is governed by that act; but it is argued that it provides material which we may employ in determining the legislative intent. We shall leave the construction of that act until such future time as a set of circumstances is submitted to us that call for its application. Nor does this case require any determination of the quantity of estate passed to the bene-

ficiary under the orders provided for by Section 1234, Or. L. Since the probate court was without authority to dispose of the homestead by its order, we are not called upon to determine what effect attaches to the order when it is made.

5. The conclusion to be drawn is that under Section 225, Or. L., the land in question upon the death of Julia E. Jackson, descended to her heirs, these plaintiffs, and the County Court was without jurisdiction to make the order the defendants rely upon. We notice that the judgment permits the plaintiff to recover rent from the defendants for a period beginning with the occupancy of C. C. Jackson; but, we assume, that the latter's heirs should be chargeable with rent only for the period that they were in possession, which began August 11, 1927. With this modification, the decree and judgment of the Circuit Court is affirmed. Costs to neither party.

AFFIRMED.

BROWN, RAND, and BELT, JJ., concur.

BEAN, J., dissents.

COSHOW, C. J., Dissenting.—Plaintiffs are the children of Julia E. Jackson who died intestate June 19, 1925, owning in fee at the time tract 12 containing 4.06 acres of Bonita Meadows and lot A of tract 19 of Bonita Meadows containing one acre. Defendants are the descendants of C. C. Jackson, the second husband of the said Julia E. Jackson. The above tract of land was occupied by the said Julia E. Jackson and C. C. Jackson as their home. He was appointed administrator of the estate of his deceased wife, and upon his petition said tract of land was set aside as

exempt property. This action was instituted for the purpose of ejecting from said premises defendants who claim to own the same as the heirs of said C. C. Jackson, who died intestate on the eleventh day of August, 1927. The action involves the construction of Sections 221 et seq. and 1234, Or. L., and will determine the ownership of the land. The judgment was rendered in favor of plaintiffs and against the defendants on the pleadings and an agreed statement of facts. Among other facts the court found that above-described tracts were owned by said Julia E. Jackson long prior to her marriage to C. C. Jackson and that they two lived thereon as husband and wife until her death; that an attempt was made to set aside said tracts of land to the said C. C. Jackson by an *ex parte* order of the County Court of Clackamas County September 24, 1925, upon the petition of said C. C. Jackson; that C. C. Jackson thereafter claimed said property as his own in fee by virtue of said order; that defendants claimed said real property as heirs at law of said C. C. Jackson, are in possession of said property, are preparing to take over said property as their own and to exclude plaintiffs therefrom. As conclusions of law the court adopted:

"1. That the plaintiffs are the owners of all of the above described property in fee simple and are entitled to the possession and benefit thereof;

"2. That the Order of the County Court of Clackamas County, Oregon, made on the 24th day of September, 1925, undertaking to set aside said property to the said C. C. Jackson as a homestead and as and for his own property, was without jurisdiction and was void and of no effect."

Judgment was entered on said findings and conclusions in favor of plaintiffs.

COSHOW, C. J.—There is no dispute about the facts involved. The case presents squarely the question of whether or not the courts of probate in this state had authority September 24, 1925, to set aside a homestead as exempt to the surviving husband. The judgment of the lower court is to the effect that the order setting aside the homestead in the instant case was without jurisdiction. Section 1234, Or. L., not only authorizes the County Court to set aside the exempt property but makes it its duty so to do. The owner of this land in fee, Julia E. Jackson, died prior to the enactment of that statute. The amendment to Section 1234 adopted in 1923 antedates the decease of said Julia E. Jackson.

The homestead exemption law has been a fruitful source of litigation since the original act was passed in 1893. This court held that that act entitled the probate court to set aside as exempt the homestead of decedent which order passed the title in fee to the widow: *In re Frizzell's Estate*, 95 Or. 681 (188 Pac. 707); *Wycoff* v. *Snapp*, 72 Or. 234 (143 Pac. 902). Evidently the legislature intended to change the law in that regard by its repeal of the 1893 statute and enacting another homestead law in 1919. The later act was construed in *Leet* v. *Barr*, 104 Or. 32 (202 Pac. 414, 206 Pac. 548), so as to subject the homestead exemption to disposition of the land by will. See, also, *Ferguson* v. *Holborn*, 106 Or. 566 (211 Pac. 953), and *Slattery* v. *Newell*, 115 Or. 22 (236 Pac. 268). The legislature was not satisfied with the law as construed in *Leet* v. *Barr*, above, and again amended Section 1234, Or. L., in 1923. Later, in 1925, *Slattery* v. *Newell*, above, was decided. Again the legislature thought it necessary to amend the statute relating to

homestead exemptions, doubtless as a result of the language in the opinion of this court in *Slattery* v. *Newell*, and amended Sections 225, 226 and 1234 in 1927 in the same act: Gen. L., Chap. 345.

Said Sections 225 and 226 still contain the provisions making the homestead subject to disposal by will and subject to the general laws of descent and distribution. There is no necessary conflict between these provisions and the provisions of said Section 1234. A tract of land may well be subject to homestead exemption and at the same time descend to the heirs of the decedent. The instant case is a good example of why the two provisions apparently conflicting are not necessarily antagonistic. Julia E. Jackson, long before she became his wife, was the owner of the tracts of land claimed as a homestead by her surviving husband. That land descended to her heirs at law immediately upon her decease, subject either to the curtesy of the surviving husband or his homestead interests therein. She having died intestate the title in fee of that property pursuant to Section 225 vested at once in her heirs at law, plaintiffs herein. Her surviving husband by virtue of Section 221 et seq., had a lawful claim to the tracts of land as his homestead. He exercised that right by claiming the land as a homestead and by occupying the same as such. "When he shuffled off this mortal coil" he could no longer use the homestead. He could no longer occupy it. The heirs at law of the said Julia E. Jackson, deceased, thereupon became entitled to the absolute and exclusive possession thereof, freed from all claim of said C. C. Jackson and all persons claiming through him. His interest in said property whether by curtesy or by reason of the homestead exemption

was only a life interest. His heirs had no claim whatever to the property.

A canon of construction is that all statutes regarding the same subject matter should be read together and effect given to every word, phrase, sentence and section of all of said statutes, if that be possible: 1 Lewis' Suth. Stat. Const. (2 ed.), 467, n. 45, Id., p. 526 et seq., §§ 274–278; 2 Lewis' Suth. Stat. Const., 665 et seq., § 348, Id., p. 706 et seq., §§ 368, 369, 370, 380, Id., p. 844 et seq., §§ 443–449; 25 R. C. L., p. 1004 et seq., §§ 246–248; 36 Cyc. 1146 et seq.; *Taggart* v. *School Dist. No. 1,* 96 Or. 422, 427 (188 Pac. 908, 1119); *Benson* v. *Withycombe,* 84 Or. 652, 658 et seq. (166 Pac. 41); *Winslow* v. *Fleischner,* 112 Or. 23, 26 (228 Pac. 101, 34 A. L. R. 826). The construction we have placed upon these several statutes give effect to all parts thereof and does no violence to any part thereof. We think that the legislature intended by its several acts to give to the homestead exemption the place to which we have assigned it in this opinion. This construction also carries out the beneficent purpose of homestead exemptions. Whether or not it was wise to give to a surviving husband with no minor children a homestead exemption from his deceased wife's real property is not for us to determine. If the probate court was without jurisdiction to set aside the homestead exemption to C. C. Jackson in the instant case, then it would have been without jurisdiction if the said Julia E. Jackson had died leaving minor children and a husband. A probate court would be without jurisdiction should a husband die leaving no property at all except a humble home, a widow and minor children. The same sentence which provides the homestead for the surviving husband

provides also for the widow and minor children. Whether or not the homestead exemption should extend as far and be as broad as it is must be determined by the legislature. We must construe the law as we find it. By the construction we have adopted we add nothing to nor subtract anything from the statute as enacted by the legislature. We simply construe the law so as to give effect to the beneficent purpose of the legislature. The court reached the correct conclusion by adjudging and decreeing the plaintiffs to be the owners of the land in fee, but its conclusion that the probate court was without jurisdiction to set aside a homestead as exempt was erroneous.

It is true that under the original homestead act this court held that real property set aside as exempt became the property in fee of the beneficiary: *Wycoff* v. *Snapp,* above. But that law was repealed by the act of 1919: *Leet* v. *Barr, Slattery* v. *Newell,* above. The incorporation of the provisions in the act of 1919, making a homestead exemption subject to devolution as other real property and the retention of that future in the subsequent amendments, makes clear the legislative intent that real property of an intestate descends to his heirs though it may be subject to homestead exemption. The homestead exemption becomes more nearly like curtesy or dower. It has the additional quality of being exempt from execution, but it does not of itself pass the fee title. Julia E. Jackson being the owner of the real property at the time of her death by virtue of the act of 1919 and the amendments thereto, the title thereto passed to her heirs at law. The surviving husband, C. C. Jackson, by virtue of claiming it as a homestead exemption acquired

only a life estate therein. A homestead exemption is property of the same nature as curtesy and dower.

Confusion results from treating homesteads as synonymous with title. One must be the owner of the title to land in this state before he can have a homestead therein. He must both own and occupy the land: Or. L., § 221. A homestead is " 'An artificial estate in land, devised to protect the possession of the owner against the claims of creditors while the land is occupied as a home': *Buckingham* v. *Buckingham,* 81 Mich. 89, 92 (43 N. W. 504, 505) ' '; 29 C. J. 782.

"A homestead possesses none of the essential requisites of a conveyance; it is merely a right or privilege given by constitutional or statutory provisions.

"It is a purely personal right which can be exercised only for the benefit of the debtor and his family.

"The homestead provisions do not create a new title, or disturb the fee simple title or equitable title in the land itself. Nor do they strengthen or enlarge the title already existing. Only the use of the property is changed, and not the title itself." 29 C. J. 783, 784.

Sometimes the word "homestead" refers only to the exempt property attached to the title. The meaning must be determined, as in other cases of general words, from the context.

It is now argued that Section 1234 which provides for setting aside all property exempt by law has no application to homesteads. By that contention the word "all" is given no effect at all. It is also argued that because the word "expend" is used in connection with the use of the exempt property the section can have no reference to homesteads because a homestead descends to the heirs and therefore cannot be expended. But the statute reads "use and expend." The fact that more than one verb is used where there

are numerous subjects does not require that every verb shall exactly fit every subject. A verb appropriate for any one subject may be properly used though it is not suited to every subject. There is no trouble in having the beneficiaries of exempt property *using* the homestead. Expend does not necessarily mean to sell but may mean use as "one expends his energy." An examination of the section also clearly expresses the idea that only the exemption is set apart. The language is "all the property of the estate by law exempt from execution": Gen. L. 1923, Chap. 263. Now, the property which is exempt is the homestead only. The land itself is exempt only while that homestead exists on it. The homestead exists only as long as it is occupied as such: Or. L., § 221. If it were not that the statute so provided the exemption of a homestead would cease with the death of the owner: 29 C. J. 994, § 470. The statute extends its benefits after death of the owner to the members of his family mentioned in said Section 225. The homestead exemption does not extend to an heir who is a collateral kindred of the decedent. Said Section 225.

Another reason for considerable confusion is that in most instances the land descends by law to the identical persons entitled to the benefits of the homestead exemption, that is to the children of the decedent and the surviving spouse. Land subject to a homestead would descend to the children just as land not subject to a homestead. The land, however, subject to a homestead would remain subject to that homestead after the death of the owner, providing his spouse survived, just as land descends to the heirs subject to the curtesy or dower of the surviving spouse. The

same exemption continues in the land in favor of the children.

It is further argued that appellants in the instant case contend that Section 1234 prevails over Sections 225 and 226. I do not understand that such is the contention. We would not say that the estate by curtesy or dower prevails over the sections prescribing the law of descent or the law of wills. All laws treating of the same subject matter must be treated as of equal effect and force. When a married person owning land dies, it descends to the heirs subject to the curtesy or dower interest of the surviving spouse. Homestead exemption is of the same nature. The land descends to the heirs as described in said Section 225 subject to the right of homestead exemption vested in the surviving spouse by the law itself. In case a decedent leaves only collateral kindred the homestead exemption would not continue after the death of the owner. Said Section 225. Consequently we do not understand that appellants here are contending that said Section 1234 is superior to said Sections 225 or 226. There is no necessity for doing other than giving every word, every phrase, every sentence in every section a correct and established meaning. To hold, however, that Section 1234 as amended by the act of 1923 does not cover homestead exemptions is not only failing to give the words ''all property'' the proper meaning but also ignores the effect of the curative clause dealing only with the homesteads being made a part of Section 1234. If the legislature intended that said Section 1234 did not include homesteads it would not have attached to that section a sentence dealing exclusively with homesteads. The sentence referred to is as follows:

"And that all orders heretofore made and entered of any court or judge thereof setting apart to any husband, widow or minor children of the deceased, any homestead under and by virtue of the provisions of section 1234, Oregon Laws, be and the same are hereby ratified, confirmed, validated and legalized in so far as such orders might or could have been lawfully made under the provisions of section 1234, Oregon Laws, the same being chapter 37 of General Laws of Oregon, 1919."

That sentence, it will be observed, is connected with what has gone before with the conjunction "and." No one can question that "all property exempt from execution" includes homestead exemptions.

The original homestead act was enacted in 1893. Said Section 1234 in its original form was a part of the code of 1862. But all of the decisions of this court up to *Leet* v. *Barr* held said Section 1234 to include homesteads: *Iltz* v. *Krieger,* 104 Or. 59 (202 Pac. 409, 206 Pac. 550); *Wycoff* v. *Snapp,* above; *In re Frizzell's Estate,* above. Only by interpreting "property" in a narrow, restricted and strict sense can there be any conflict between Sections 225, 226 and 1234. There is no more necessity for placing such a construction on the word "property" in said Section 1234 than there is to place that construction on the word "property" in general use. It is a comprehensive term, broad enough to include all kinds of property, personal, real, mixed. It includes freehold estates, leasehold estates and intangibles of all kinds. A property in land which exempts the land from execution in favor of the occupier thereof during life is a very valuable property. A life estate in real estate is real property.

We must not forget that the legislative will is supreme in legislation regarding homesteads. No

such estate, interest, privilege or right existed at common law: 29 C. J. 783. There is no necessary conflict between said Section 221 et seq. and Section 1234. There is a conflict between Section 1234 as amended in 1923 and decisions of this court in *Leet* v. *Barr,* above, and *Slattery* v. *Newell,* above. Under those conditions the will of the legislature should be adopted rather than defeated by construction. When said Section 1234 was enacted it was for the purpose of overcoming the decision of *Leet* v. *Barr* to the effect that said Section 1234 must give way to Sections 225 and 226. All three of the sections may stand side by side and all three express the will of the legislature. *Leet* v. *Barr,* above, therefore was modified by the amendment of said Section 1234 in 1923.

There is no place for applying the rule that particular must prevail over general. That rule can only apply where there is irreconcilable conflict between the two. There is no such condition presented here.

To deny jurisdiction to the probate courts to set aside exempt homesteads is fraught with serious consequences. There may be many widows and widowers, old people, enjoying the shelter of a home set apart to them as exempt by the probate court. The majority opinion denounces all such orders as void. The heirs may at any time by virtue of the majority opinion eject all such widows and widowers because they are in possession under a void order. Such an order is a nullity. It may be set aside at any time. It would not be any defense to an action of ejectment by the owner of the title.

How, when and where in the history of legislation about homesteads did probate courts lose jurisdiction

of the subject matter? See writer's opinion in *In re Brizzolari* (Or.), 275 Pac. 17.

The decree should be modified so as to uphold the decree of the County Court for Clackamas County entered June 19, 1925, setting aside said land as exempt from execution; also the judgment should be modified by reducing the amount plaintiffs shall recover from defendants to fifteen dollars per month from the eleventh day of August, 1927, the date of the death of C. C. Jackson. The decree should be affirmed in awarding the fee title to plaintiffs.

McBRIDE, J., concurs in this opinion.