(No. 23381.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST SCHNEIDER, Plaintiff in Error.

*Opinion filed February 19, 1936.*

GRENVILLE BEARDSLEY, THOMAS J. JOHNSON, SR., and THOMAS J. JOHNSON, JR., for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, RICHARD H. DEVINE, JOHN T. GALLAGHER, and MORRIS G. MEYERS, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

The defendant, Ernest Schneider, was found guilty of manslaughter in the criminal court of Cook county and seeks a review of that conviction by this writ of error.

He was tried and convicted once before on the same indictment, that judgment being reversed and the cause remanded by this court in *People* v. *Schneider,* 360 Ill. 43.

In our former opinion, we fully set forth the facts shown by the record of the first trial and it is unnecessary to again repeat them here. On this trial some witnesses were either absent or not called and other and additional witnesses testified, but the evidence and the issues remained substantially the same. As in the former trial the prin-

cipal issues of fact contested were as to whether or not another car immediately preceded that driven by the defendant so as to cut off his view of the street and prevent him from having a reasonable opportunity to avoid the collision, whether or not he was driving at an excessive rate of speed, and most important of all, whether or not he was intoxicated at the time of the accident. On the former trial three witnesses testified that another car was preceding that driven by the defendant, whereas on this trial seven other witnesses testified to the same fact and also testified that the People's witness Delacker did not stand in the middle of the street waving to the defendant to stop. As on the prior trial, there was a sharp and irreconcilable conflict in the evidence as to whether or not defendant was intoxicated at the time of the accident, several police officers and others testifying that he was under the influence of liquor, and a large number of others, including a doctor and trained nurse, testifying that he was not intoxicated. For obvious reasons we will refrain from discussing the testimony in detail, or expressing any opinion as to its weight or conclusiveness. The defendant strongly urges that it fails to show him guilty beyond a reasonable doubt and preponderates in his favor, whereas the People attack the credibility of defendant's witnesses and with equal vigor assert the contrary. It is enough for us to say that the record is of such a character as to make it imperative that a trial be had free from prejudicial error, that the jury be protected from outside improper influence, that it be fully and fairly instructed and that the prosecutor avoid appeals to passion and prejudice.

At the beginning of the trial, the attorney for the defendant requested that the jury be kept together during the trial and as a reason therefor suggested to the court that the case was certain to attract newspaper publicity of a character unfavorable to the defendant; that the case had been tried before and it was reasonable to suppose

that the newspapers would carry articles in connection with it, and also pointed out to the presiding judge that he had no control over the papers; that "there undoubtedly would be a blast in the papers" about the case which would prejudice the rights of the defendant. The State's attorney objected to keeping the jury together, saying, "I think the real reason why you are making this motion is this, the Supreme Court said this is a close case and if you get the jury locked up you have a decided advantage over the State." The court overruled the defense motion to keep the jury together and permitted them to separate and have access to newspapers throughout the trial, which lasted several days. The day after the trial started, a Chicago paper published an article which was admittedly read by some members of the jury, and which stated not only the facts as to the case being re-tried, but contained the following paragraph: "A week ago Schneider drove his car against a parked automobile in front of the Hudson avenue police station. He was arraigned in traffic court for driving while intoxicated and the case was continued." Defendant moved to withdraw a juror and declare a mis-trial, which motion was denied. This ruling of the court is assigned as error.

Other errors complained of concern the refusal of instructions, examination of witnesses, and the arguments for the People. The court refused to give an instruction defining intoxication, refused to give an instruction as to proximate cause, and refused to give an instruction that there was no legal duty resting upon a witness to an accident to give his name and address to the police or State's attorney, the latter instruction being requested because of the trial court permitting the prosecutor to question witnesses at length as to whether or not they had given their names to the police or the State's attorney, and if not, why not.

Although it is apparent that the defendant was prejudiced by allowing the jury to separate, it is urged by the People that this was a matter entirely within the discre-

tion of the trial court. It is intimated, although not actually claimed, that this is a discretion not subject to our review. Four cases are relied upon, namely, *Sutton* v. *People,* 145 Ill. 279; *People* v. *Stowers,* 254 id. 588; *People* v. *Foster,* 288 id. 371, and *People* v. *Robinson,* 299 id. 617.

In *Sutton* v. *People, supra,* which appears to be the earliest case in this State on the subject, it affirmatively appears that the request to keep the jury together was made privately of the court after the trial had started, and that the court informed the defendants that unless some reason for such an order was shown it would not be made. The defendant declined to make any such showing and the jury was permitted to separate. This action of the court was held not to be erroneous. It was said, "Cases both criminal and civil may arise in which it will be proper to keep the jury away from the public while the trial is in progress, but they are the exception, and may be safely left to the discretion of the judge trying the case."

In *People* v. *Stowers, supra,* the opinion states that it was not shown that the accused made any objection to the separation nor that any prejudice resulted by allowing the separation. We said, "the court may exercise its discretion in allowing the jury to separate during the progress of a trial in a criminal case less than capital, unless some sufficient cause is shown why they should be kept together, upon properly instructing them concerning their duties." In *People* v. *Foster, supra,* no question was raised as to permitting the jury to separate until after verdict, and in *People* v. *Robinson, supra,* the opinion states that no cause was shown why the jury should be kept together and holds that it was not error to allow them to separate. It is thus apparent that none of the cases relied upon by the People are broad enough to sustain the ruling of the court in the case before us, and so far as we are able to find, this is the first case in Illinois where a jury in a case of felony has been permitted to separate over the objection of the

defendant and in the face of reasonable cause. shown for keeping them together, with a definite result prejudicial to the defendant. This court expressed itself rather forcefully on the danger of such a situation in *Jumpertz* v. *People,* 21 Ill. 375, and although that was a capital case much that is said therein is applicable to this one. In that case it was pointed out a slight contact of the jury with outside pressure may endanger the innocent as well as the guilty; that public prejudice may very easily be diffused through a jury room, so as to intimidate the weak and excite the impulsive. The court speaking through Mr. Justice Caton said: "It may be that in this case there was no outside excitement and no public prejudice, which could have been likely to have communicated itself to the jury on the many and protracted exposures of its different members, which are shown to have occurred. Of this we can not and would not know anything. As one rule must govern all cases, that rule must be such as not to endanger the innocent, against whom circumstances may excite a strong suspicion and for which public clamor demands a victim. It may be that not in one case in a hundred is there an actual necessity for thus isolating the jury from the outside world, but the hundredth case demands it as much as if the necessity actually existed in every case. The law presumes, and the history of the world shows, that there may be danger of improper influences disturbing the mind of the jury, and hence there can be no safety unless every case is so tried as to exclude all doubt from such causes."

Although the case we are considering is not a capital one, as was the *Jumpertz case,* it is a stronger one for the defendant, because in this case a definite prejudice to the rights of the defendant was shown to exist. We think it best to hold the rule to be that the discretion of the trial judge to permit a separation of the jury is one that is subject to review by this court and that it is the better practice, where an objection is made to such a separation and

reasonable grounds are advanced in support of such objection, to require that the jury be kept together and entirely free from extra-legal information and influences. In the case before us the request of the defendant that the jury be kept together was a reasonable one and his statement that newspaper publicity and comment was likely to prove prejudicial could have easily been foreseen by the trial court. It was error to permit the jury to separate in this case and that error was prejudicial to the defendant.

It was defendant's theory of his case that he was sober, that he was driving no faster than fifteen to eighteen miles per hour and that the reason for the collision was the sudden turning or dodging of a car immediately in front of him, giving him no opportunity to see the wreck in time to avoid hitting it. On this theory, and in accordance with his own testimony he requested the court to instruct the jury that if they found from the evidence that he had no notice of, or reasonable opportunity to know of or see an overturned car in his path, and was driving no faster than fifteen to eighteen miles an hour, then such speed was not of itself criminal negligence, and he would not be acting wantonly, unless the jury found from the evidence that his driving was of itself a violation of law. This instruction correctly stated the law as held by us on the former appeal in this case and should have been given. *People* v. *Schneider, supra.*

The court also refused to instruct the jury as to the meaning of the term "intoxicated." The defendant requested an instruction stating in substance that such intoxication as would make the driving of a car unlawful was that degree of intoxication which would render him incapable of giving that attention and care to driving that a man of prudent and reasonable intelligence would give. We have held that "drunk" and "intoxicated" are synonymous, (*People* v. *Rewland,* 335 Ill. 432,) and we are of the opinion that the term is of such elasticity as to re-

quire legal definition when applied to a criminal statute. Different persons' ideas as to the meaning of the term, if left undefined, would be such as to make the matter of guilt or innocence of a defendant entirely one of caprice. Whether or not a person is intoxicated is a question of fact for the jury, but what constitutes intoxication is a question of law to be defined by the court. The courts of different States have applied varying definitions to the term. Thus, in Kansas it has been held that a person is intoxicated within the meaning of an accident policy if his faculties are affected to such an extent as to impair his ability to care for himself. (*Richardson* v. *Business Men's Protective Association,* 129 Kan. 700, 284 Pac. 599.) In Oregon it has been defined as drunkenness evidenced by abnormal excitations of passions or feelings and impairment of mental and physical faculties. (*Brady* v. *Schnitzer,* 135 Ore. 250, 295 Pac. 961.) In Louisiana it is held to mean the condition of being under the influence of intoxicating liquor to such an extent as to have lost normal control of the faculties. (*Valesi* v. *Mutual Life Ins. Co. of New York,* 151 La. 405, 91 So. 818.) In Wisconsin it has been held that the driver of an automobile is not intoxicated within the meaning of the statute unless his indulgence in intoxicating liquors is such as to result in an appreciable interference with his exercise of ordinary care in the management of the vehicle. (*Steinkraus* v. *Eckstem,* 170 Wis. 487.) Many other definitions might be quoted, but we think it unnecessary to prolong the discussion. They all differ in wording, but it will be found that each of them in some way or other includes the central idea of such an impairment of the faculties as to diminish the ability to manage the vehicle and impair the faculties of care and caution on the part of the driver. We think the instruction requested by the defendant was reasonably accurate and should have been given.

The defendant also complains of the court's refusal to give an instruction regarding proximate cause, but in this

there was no error, as there was no evidence to sustain it. Another instruction refused, and properly so, sought to tell the jury that the law did not require witnesses to an accident to give their names or addresses to the police or State's attorney. The instruction was argumentative in form, singled out certain evidence and was otherwise objectionable.

In our opinion remanding this cause after the former trial we admonished the assistant State's attorney who tried it in regard to his prejudicial argument to the jury. We pointed out, as we have many times before pointed out, that there is nothing in the duty of a State's attorney which requires him to prejudice the rights of a defendant to a fair trial in his eagerness to secure a conviction. Notwithstanding this admonition in this identical case, the closing argument was again highly prejudicial. The prosecutor stated that he himself could have taken the witness stand and denied certain evidence, and although an objection to this remark was sustained, the court did not direct the jury to disregard it, and in any event the damage was accomplished. The argument as a whole was of such a character as to indicate that the defendant's witnesses were bribed or hired, although there was no evidence to that effect. Continual references were made to the defendant's financial standing, to the effect that he operated a large mail order house, that he was a big business man, and in general the argument was well calculated to engender class hatred. There is a wide and important distinction between justifiable denunciation of the acts of a defendant and such appeals as are intended to engender hatred against him as a person. This distinction must be observed, and it was not in the present case.

For the errors indicated the judgment will be reversed and the cause remanded.                *Reversed and remanded.*

Mr. Justice Wilson, dissenting.