THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BOBBY FRYE, Defendant-Appellant.

Fourth District   No. 4—82—0526

Opinion filed April 5, 1983.

Daniel W. Handlin, of Lincoln, for appellant.

Robert J. Barry, State's Attorney, of Lincoln (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant was arrested for driving under the influence of intoxicating liquor in violation of section 11—501(a) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)). He was appropriately admonished but refused to take a breath analysis test, and upon notification by the Logan County circuit clerk, he requested a hearing on the matter pursuant to the provisions of section 11—501.1(d) of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(d)). An implied consent hearing was held in the circuit court of Logan County. The court made the requisite findings which were adverse to

the defendant, and the Secretary of State, upon being notified thereof, pursuant to the Code suspended defendant's license. Defendant appeals.

■■ ■ Issues raised on appeal are: (1) whether the arresting officer had reasonable grounds to believe that defendant was driving or in physical control of the vehicle at the time of the incident; (2) whether the State established that defendant had ever driven a vehicle in Illinois so as to trigger the implied consent law; (3) whether the two versions of section 11—501.1 of the Code, passed the same day by the legislature, are so irreconcilable as to be fatally defective; and (4) whether the sworn statement of the arresting officer contained insufficient facts to sustain his conclusion that the defendant was operating a vehicle in violation of the statute.

The evidence at the hearing consisted solely of the testimony of a State trooper. He testified that he was dispatched to an accident scene at about 7 a.m. on March 1, 1982. On arrival he found a vehicle wrecked and lying in a ditch, but there was no one near it. Over hearsay objection, the trooper stated that a farmer came upon the scene and stated that at about 4:45 a.m. that morning a man had come to his house and asked to be admitted; the farmer refused permission for him to stay but did allow him to use the telephone; the man was unable to complete three different calls and was wobbling back and forth; the farmer learned that the man's name was Bobby Frye and took him to a cafe in Emden.

After taking some measurements at the scene, the trooper went to the cafe and found an individual seated at the counter. He asked if his name were Frye and received an affirmative answer. The trooper asked him to come outside to the squad car; Frye complied, and as they approached the squad car he stated without prompting, "I wasn't driving that car." The trooper noticed a moderate odor of alcohol.

They returned to the accident scene and the trooper learned that Frye's license had been suspended for driving under the influence of intoxicants. Frye stated to him that someone named "Junior" had been driving the car and that after the accident Junior had departed on foot. The trooper then arrested Frye and admonished him concerning the breath analysis test. Frye refused to take the test. The trooper stated as his opinion that Frye was under the influence of alcohol.

The trooper also testified as to a conversation with a Mrs. Near at the cafe. Hearsay objection to the conversation was overruled by the court. The record is not clear as to when this conversation took place,

whether before or after defendant was arrested. Mrs. Near stated, according to the witness, that Frye came into the cafe, threw some money on the counter, and stated that he was in trouble because he had just wrecked his car.

The evidence of the trooper also established that the car was registered to Frye's son who was in the service at the time; that the precise time of the accident was unknown; and that no one had in fact seen Frye driving the car.

The trial court at the conclusion of the hearing made the requisite findings that the trooper had reasonable grounds to believe that the defendant was driving under the influence of intoxicating liquor, that he had properly admonished the defendant concerning the breath analysis test, and that defendant had refused to take the test.

The issues raised concerning driving, as indicated above, are twofold: (1) whether defendant had even driven in Illinois, and (2) whether he was driving at the time of the incident in question. It is beyond dispute that driving in this State is the predicate for the application of either version of section 11—501.1 of the Code. Both begin by stating that any person who drives a motor vehicle in this State consents to take a breath analysis test. Minor variations in language exist, but the gist is the same. Defendant argues that there was no evidence presented by the State that he had ever driven in Illinois so as to consent to the test. We disagree. The evidence was uncontroverted that he had at one time possessed a driver's license and that at the time of the incident here it had been suspended. Possession of a valid license at any time is *prima facie* proof that the holder must have driven upon the highways of the State. It defies common sense to say that one walked to the Secretary of State's testing station, obtained a license without a road test, and then kept the license as a souvenir. Proceedings under section 11—501.1 are civil in nature (compare *People v. Malloy* (1979), 76 Ill. 2d 513, 395 N.E.2d 381); after the existence of a license has been established, the burden then shifts to the defendant to prove that he never exercised his driving privileges in this State. That was not done here; the defendant presented no evidence except cross-examination of the trooper; and this phase of his argument has no merit.

The second aspect of defendant's argument relates to driving at the time of the incident. He points out correctly that the implied consent under the statute must be incident to a lawful arrest for driving under the influence of intoxicating liquor, and claims that the manifest weight of the evidence here is against any such lawful arrest. He maintains that no one saw him driving, that the trooper's conclusions

were based upon hearsay, and that his conclusions were purely subjective in nature.

■ It has long been established in this State that "[o]bservation of the defendant in the act of driving is not an indispensable prerequisite to conviction of driving while intoxicated, provided the act of driving while intoxicated is established by other credible and substantial evidence, either direct or circumstantial." *People v. Toler* (1975), 32 Ill. App. 3d 793, 799, 336 N.E.2d 270, 275; see also *People v. Younge* (1980), 83 Ill. App. 3d 305, 404 N.E.2d 415; *People v. Garnier* (1959), 20 Ill. App. 2d 492, 156 N.E.2d 613.

It is noteworthy that each of these cases, *Toler, Younge* and *Garnier*, involved questions of reasonable doubt. The instant case involves only a question of manifest weight, a much lighter standard.

The issue, framed in the words of the statute, is: "whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol." Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(c).

■ The defendant contends that the reasonable grounds, if any, grew out of what he characterizes as the hearsay statements of the farmer and Mrs. Near to which the trooper testified over objection. We do not agree. The statements of both were offered, not for the truth of the matters asserted, but as demonstrating what induced the trooper to act. Thus they cannot be characterized as hearsay. (McCormick, Evidence secs. 246, 249 (2d ed. 1972).) The farmer's statement clearly was anterior to the arrest; the record is unclear as to when Mrs. Near's statement was made. If it were anterior to the arrest, it was not hearsay; if it were afterwards, it was irrelevant.

The trial court properly admitted the testimony, albeit for the wrong reason. The court appeared to be under the impression that an implied consent hearing was in the nature of a preliminary hearing in a criminal case and thus any hearsay was admissible. The statute itself declares that the implied consent hearing is civil and therefore civil rules apply. Hearsay in a civil proceeding is inadmissible unless it qualifies under one of the several exceptions to the rule, or unless it can be said, as in the instant case, that the declarations are not hearsay by definition.

■ ■ We are of the opinion that adequate grounds existed. Reasonable grounds or probable cause to effect an arrest exist when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to warrant a man of reasonable caution in believing that an of-

fense has been committed by the person about to be arrested. An arrest based on bare suspicion is not justified, but probable cause is something less than evidence necessary to result in a conviction. *People v. Peak* (1963), 29 Ill. 2d 343, 194 N.E.2d 322.

The evidence here, apart from the subjective impressions of the officer, indicated: a wrecked vehicle; the defendant found in the cafe and walking unsteadily to the squad car; the odor of alcohol on the defendant's breath at that time; the volunteered statement of the defendant that he was not driving the car; the further statement that the car belonged to "Junior," who had departed on foot.

Defendant's next argument relates to the statute under which the hearing was held. He maintains that two versions of it, both passed on the same day by the legislature, are so irreconcilable that no implied consent statute existed on the day of the incident in question.

■ It is accurately stated that two acts amending section 11—501.1 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1) were passed by the legislature on June 18, 1981. Public Act 82—221 (1981 Ill. Laws 1220) originated as House Bill 38 and Public Act 82—311 (1981 Ill. Laws 1734) was Senate Bill 457. Even a casual inspection of the two reveals substantial differences. In general Public Act 82—311 is more stringent; the penalties are more severe; evidence of refusal to submit to testing is admissible in civil and criminal proceedings; dead or unconscious persons are not deemed to have withdrawn consent. Reconciliation of the two is well beyond the best powers of even a Byzantine theologian. The principle that statutes are to be construed together so as to present one coherent system of legislation (*S. Buchsbaum & Co. v. Gordon* (1945), 389 Ill. 493, 59 N.E.2d 832) must fail in this instance.

It has long been the rule in this State that if "two amendments cannot both be given effect, the later amendment in point of time controls." (*People ex rel. Schlaeger v. Mattes* (1947), 396 Ill. 348, 352, 71 N.E.2d 690, 692.) In *Mattes* the contention was that the later amendment was that last signed by the Governor. The supreme court disagreed, saying, "We believe the intention of the legislature can more nearly be ascertained from its last expression rather than from the order in which bills are signed or not by the Governor." (396 Ill. 348, 354, 71 N.E.2d 690, 693.) In that case the record showed that one bill had been passed by the legislature in the afternoon and the other at the night session on the same date. The supreme court hold the latter to be controlling.

■ ■ This rule was codified by the addition in 1971 of section 6 to "An Act to revise the law in relation to the construction of the

statutes" (Ill. Rev. Stat. 1981, ch. 1, par. 1105), which provides in pertinent part:

"Two or more Acts which relate to same subject matter and which are enacted by the same General Assembly shall be construed together in such manner as to give full effect to each Act except in case of an irreconcilable conflict. In case of an irreconcilable conflict the Act last acted upon by the General Assembly is controlling to the extent of such conflict. The Act last acted upon is determined by reference to the final legislative action taken by either house of the General Assembly, whether such final action is passage on third reading in the second house, concurring in or receding from an amendment, adoption of a conference committee report, acceptance of the Governor's specific recommendations for change, or passage over the Governor's veto."

The time elements as to the two bills involved here is disclosed by an inspection of the journals of the respective houses. (Senate Journal, 82nd Gen. Assem., No. 61, June 18, 1981, at 2513, 2529, 2534; House Journal, 82nd Gen. Assem., No. 66, June 18, 1981, at 3930, 3952.) The Senate Journal reveals that House Bill 38 (Pub. Act 82–221) was approved on third reading sometime between the hours of 11:15 a.m. and 12:30 p.m. The House Journal reveals that Senate Bill 457 (Pub. Act 82–311) was approved by the House sometime after 4:30 p.m. It therefore follows that either under the case law (*Mattes; Buchsbaum*) or the statute Public Act 82–311 is the later statute and thus controlling.

Moreover, without following the wooden approach of last-passed-equals-control, it appears to us that the general legislative intent is embodied in Public Act 82–311. House Bill 38 (Pub. Act 82–221) was entitled "An Act in relation to the admissibility in civil cases of coroners' reports and records and biological evidence of the intoxication of deceased persons." It also amended certain portions of "An Act to revise the law in relation to coroners" (Ill. Rev. Stat. 1981, ch. 31, par. 1 *et seq.*) and of "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1981, ch. 51, par. 1 *et seq.*). On the other hand, Public Act 82–311 confined itself to the Illinois Vehicle Code and produced a comprehensive revision of sections 11–501 and 11–501.1 of that Code. Alterations of those sections by Public Act 82–221 appear to be only appendages to amendments to the other statutes.

Defendant's final contention relates to the affidavit filed by the trooper pursuant to section 11–501.1(c) of the Code. (Ill. Rev. Stat. 1981, ch. 95½, par. 11–501.1(c).) The Statute requires the arresting

officer to file with the circuit clerk for the county in which the arrest took place a sworn statement naming the person who refused to submit to a breath or other test. Among other things, the statute requires the officer to state that he had reasonable cause to believe that the person arrested was driving a motor vehicle while under the influence of alcohol; that the test(s) were incident to such lawful arrest and that the person refused to take the test(s). The clerk is then required to notify the person named in the affidavit that unless he requests a hearing on the matter within 28 days, his license will be suspended.

In the record here there appears such an affidavit as the first page of a multi-copy printed form, apparently provided by the Secretary of State to law enforcement agencies. It complies with the statute in all respects. Defendant bases his argument on *People v. Batchelder* (1982), 107 Ill. App. 3d 81, 437 N.E.2d 364.

In that case the appellate court held that the affidavit pursuant to section 11−501.1(c) of the Code must state the underlying facts upon which the officer's conclusion was based in order to comport with the fourth and fourteenth amendments to the United States Constitution.

While we accord great deference to the learning of our brethren of the *Batchelder* court, we are unable to envision the Armageddon which they believe will arrive unless the affidavit be modified. We suggest that they have misconstrued the purpose of that document.

The affidavit confers no greater rights upon law enforcement officers than those which they already possess. Its purpose is only to inform the appropriate circuit clerk that an arrest has taken place and that the arrestee has declined to take the test(s) in order that the clerk may notify the arrestee of his right to an implied consent hearing. The question of whether the arresting officer had reasonable grounds for acting as he did is settled at that hearing, not upon the affidavit. If the arrest were not lawful in the first instance, no number of affidavits can effect a cure; if the arrest were lawful, no number of affidavits can add anything to it.

The order of the circuit court of Logan County is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.