THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERCY FRAZIER JR., Defendant-Appellant.

Fourth District   No. 4—83—0204

Opinion filed April 19, 1984.

GREEN, J., specially concurring.

Michael R. Cornyn, of Allen & Korkowski & Associates, of Rantoul, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant was tried by a jury, convicted of driving while under the influence of alcohol, and sentenced to 300 days' imprisonment. An analysis of the defendant's breath an hour after his arrest revealed a blood-alcohol concentration of .28, and this information was introduced into evidence. On appeal the defendant argues that the results of the breath test should not have been used at trial and that the jury received misleading instructions on the subject of intoxication. The defendant also argues that he was not proved guilty beyond a reasonable doubt. We conclude that no reversible error occurred and that the defendant was proved guilty of the offense, and we affirm the judgment of the circuit court.

In Champaign shortly after 6 p.m. on October 15, 1982, the defendant, driving home, was involved in a car collision several feet from his driveway. The defendant's car hit the left rear side of a car that was traveling in the opposite direction; both drivers had moved toward the center of the street to avoid parked cars, and apparently the accident resulted from those maneuvers. The police were called. At trial, two officers testified that they found the defendant seated behind the steering wheel of his car, staring straight ahead. The defendant's speech was clear, but his breath smelled of alcohol, his eyes were glassy, and he had trouble standing. The defendant was arrested and taken to the Champaign police station, where he initially refused to submit to a breath test but later changed his mind and took the test. The defendant also took two dexterity tests at the police station, and he had trouble performing both. Both police officers believed that the defendant was intoxicated at the time of his arrest.

The defendant testified that in the four hours preceding the accident he went to two taverns and had a total of four or five mixed

drinks of whiskey and water. The defendant denied that he was unsteady on his feet after the accident. The bartender at the first tavern confirmed the defendant's account of his two or three drinks at that establishment and said that he had not noticed anything unusual about the defendant's condition. A neighbor who heard the collision and watched the police escort the defendant from his car testified that the defendant did not have any difficulty walking.

## I

The defendant first argues that because he initially refused to take the breath test, one should not have been given and therefore the trial court should have granted his motion to suppress the test results. In arguing the motion, the parties agreed that the report made by the arresting officer, Hockings, would constitute the evidence. According to the report, upon arriving at the police station the defendant was informed of his rights under the implied consent law, section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1). When the defendant announced his refusal to take the test, Hockings advised him to consider the consequences of that decision. The defendant persisted in his refusal, so Hockings told him to think about it for 10 minutes. Soon the defendant changed his mind and agreed to take the test, which showed a blood-alcohol concentration of .28. The defendant argues that his initial decision to refuse to take the test was binding and irrevocable and that the police conduct resulting in his eventual decision to take the test was coercive.

The defendant first relies on the provision in section 11—501.1(c) that if a driver refuses to take a test, "none shall be given" and instead the clerk of the county court is to be notified of the refusal (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(c)). The defendant interprets this as barring all testing after a refusal.

The adjuration, "none shall be given," expresses the legislature's decision to prohibit involuntary blood and breath tests, though they would be constitutionally permissible under *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826. (See *People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447 (discussing earlier versions of the implied consent statute (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501; Ill. Rev. Stat. 1969, ch. 95½, par. 144)).) The legislature has found involuntary tests distasteful and has chosen instead to permit drivers to refuse to take tests, to withdraw their implied consent, but bear the consequences that may flow from that decision. (See *South Dakota v. Neville* (1983), 459 U.S. 553, 559, 74 L. Ed. 2d

748, 756, 103 S. Ct. 916, 921 ("South Dakota, however, has declined to authorize its police officers to administer a blood-alcohol test against the suspect's will. Rather, to avoid violent confrontations, the South Dakota statute permits a suspect to refuse the test, and indeed requires police officers to inform the suspect of his right to refuse. [Citation.] This permission is not without a price, however").) The statute does not prevent the police from administering a test to a driver who has changed his mind and has voluntarily decided to submit to a test; the provision prevents only involuntary testing.

The defendant also relies on *People v. Shorkey* (1974), 23 Ill. App. 3d 662, 321 N.E.2d 46. The implied consent statute applicable in that case provided that a driver's "refusal to submit to the test within 90 minutes after being given the written notice [*i.e.*, of his statutory rights] shall constitute a refusal to take the test." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(a)(9).) There, a driver at first refused to submit to a test but within the 90-minute period changed his mind and asked to take it; the police refused to administer one. The driver argued that his consent was timely and was not precluded by his earlier decision to refuse to take the test. On appeal the court held that "a refusal to submit to a chemical breath analysis is a binding refusal which cannot be nullified by a subsequent consent" (*People v. Shorkey* (1974), 23 Ill. App. 3d 662, 665, 321 N.E.2d 46, 48); the same result was reached in *People v. Wierman* (1982), 107 Ill. App. 3d 7, 436 N.E.2d 1081. The defendant argues that this reasoning supports his theory that a drive may not revoke an initial refusal to take a test.

*Wierman* and *Shorkey* do not prohibit the police from administering a test as a matter of grace to a driver who has reconsidered his initial refusal. The problem in those two cases stemmed from the 90-minute period then allowed by the implied consent law for a driver to submit to a test, and the question common to those cases was whether a driver could be bound irrevocably by a refusal made before the 90 minutes were up. The statute applicable here was rewritten by Public Act 82—311, effective January 1, 1982 (see *People v. Frye* (1983), 113 Ill. App. 3d 853, 447 N.E.2d 1065 (discussing the legislative history of Pub. Act 82—311)) and does not contain a similar provision concerning time. *Wierman* and *Shorkey* should be read as holding only that a refusal would bind the driver if the police wanted it to; thus, the police did not have to wait out the remainder of the 90 minutes, unemployed, once the driver refused to take a test.

We see no reason to prohibit the police from allowing a driver to take a test if he has reconsidered his refusal. What is finally done is all that counts of course: just as a driver who fails to complete a

test will be deemed to have refused to take it (*People v. Schuberth* (1983), 115 Ill. App. 3d 302, 450 N.E.2d 459), the initial refusal of the defendant here could have been given no effect once he completed the test.

The defendant also argues that he was mentally coerced into taking the test. That would be contrary to the legislature's decision to permit drivers to refuse to take tests. The defendant's eventual decision to submit to the test was made freely and voluntarily. Officer Hockings merely advised the defendant to think carefully about what he wanted to do and gave the defendant some time to reflect. This does not even constitute nagging and falls far short of coercion.

Therefore, we conclude that the trial court did not err in denying the defendant's motion to suppress the breathalyzer results.

## II

The defendant argues that the result of the breathalyzer test should not have been admitted into evidence. The defendant bases this objection on two separate grounds: first, that the State failed to produce the text of certain standards on vetting and certifying breathalyzer machines, and second, that the State failed to show that the results of the breath test were accurate evidence of the defendant's blood-alcohol concentration at the time he was driving.

Before introducing the testimony of Kent Randolph, the certified breathalyzer technician who regularly tests the accuracy of the Champaign police department's machine, the State asked the trial judge to take judicial notice of a pamphlet issued by the Illinois Department of Public Health and called, "Standards and Procedures for Testing for Alcohol and All Other Drugs by Breath, Blood, and Urine Analysis." The date of the pamphlet was January 1, 1982. Rule 4.04 of the "Standards and Procedures" said:

> "Instruments which meet the provisions of Rules 4.01, 4.02, and 4.03 will be tested by the Department in accordance with the Standards for Devices to Measure Breath Alcohol which were promulgated by the National Highway Traffic Safety Administration, U.S. Department of Transportation."

The defendant asked the State to produce the National Highway standards; the State asserted that they pertained only to the selection of machines and not to their periodic inspections and tests for accuracy. The State pointed out that rule 10 of the "Standards and Procedures" contains the necessary information on the procedures for regularly testing and certifying machines. The defendant argues that the National Highway rules mentioned in rule 4.04 must pertain to some-

thing other than procedures for the selection of machines, for the type of breathalyzer used here is listed in rule 4.02 as an approved model, which implies that it had been selected on the basis of standards other than those later referred to in rule 4.04. The trial judge took judicial notice of the "Standards and Procedures" and did not require the State to produce the National Highway standards.

■ The "Standards and Procedures" pamphlet was not introduced into evidence and is not part of the record on appeal, so our review of this question is necessarily handicapped by the pamphlet's absence. Based on the transcript of the informative colloquy among defense counsel, the assistant State's Attorney, and the trial judge on this question, we conclude that the relevant standards on the periodic testing and certifying of machines were found in rule 10, which was before the court and counsel, and that the lack of the National Highway standards did not limit defense counsel in his cross-examination of Randolph. The "Standards and Procedures" and Randolph's testimony provided a sufficient foundation for the admission of the breathalyzer results. Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(a)(1).

The defendant also argues that the State failed to show any connection or relationship between the breathalyzer results and the level of his blood-alcohol concentration at the time he was driving. The defendant notes that the test was given about an hour after he was taken from his car and that alcohol is absorbed into the blood at varying rates. The defendant argues that expert testimony was required to explain to a jury the significance of the test results.

■ This court recently rejected a similar argument in *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931. Here, the defendant testified about his drinking during the several hours before his arrest, and the two police officers believed that the defendant was intoxicated at the time of his arrest. The breathalyzer results are relevant evidence of the defendant's intoxication, and they were properly admitted.

### III

The defendant next attacks the instruction that was used here to define "under the influence of alcohol." The jurors were told:

> "A person is under the influence of alcohol when as a result of drinking any amount of alcohol his mental and/or physical faculties are so impaired as to reduce his ability to think and act with ordinary care."

This is Illinois Pattern Jury Instruction (IPI), Criminal, No. 23.05 (2d ed. 1981), with "alcohol" substituted for "intoxicating liquor."

The defendant argues that the definition should have referred specifically to driving and the ability to operate a motor vehicle because that is the basis of the offense, the activity that is prohibited. The defendant also believes that specific reference to driving was needed to focus the jury's attention on his condition at the time he was driving rather than at some other, irrelevant time.

In support of this argument the defendant relies on *People v. Schneider* (1936), 362 Ill. 478, 200 N.E. 321; the Committee Note to IPI Criminal No. 23.05 also cites *Schneider*. That was a conviction for manslaughter arising out of an automobile accident, and one of the disputed issues was whether the defendant was intoxicated. The supreme court held that reversible error was committed when the trial judge refused to give the jury an instruction defining "intoxicated." Discussing the meaning of the term, the court said:

> "Many other definitions might be quoted, but we think it unnecessary to prolong the discussion. They all differ in wording, but it will be found that each of them in some way or other includes the central idea of such an impairment of the faculties as to diminish the ability to manage the vehicle and impair the faculties of care and caution on the part of the driver." (*People v. Schneider* (1936), 362 Ill. 478, 485, 200 N.E. 321, 324.)

The defendant here offered an instruction containing this language.

■■ The instruction that was used in this case did not depart from the "central idea" endorsed in *Schneider*. The two standards are identical: both speak of an impairment of the ability to act with care. The instruction did not need to mention driving, for the definition of "intoxication" does not vary according to the activity engaged in. To hold otherwise would imply that the consumption of alcohol may impair a person's ability to think and act while it leaves intact his ability to drive, a notion we reject. "Thinking" and "acting," the concepts used in the instruction, are broad enough to include all the tasks associated with driving.

Furthermore, the jury did not need to be reminded again that the offense here was based on the defendant's condition while he was driving and not at some other time. Other instructions, such as the ones defining the offense and summarizing the issues, referred to driving as the relevant activity. For example, at the defendant's request the trial court modified the second proposition in the issues instruction, taken from IPI Criminal No. 23.06, to say, "That the defendant at the time he drove the vehicle was under the influence of alcohol," rather than simply, "That the defendant then was under the influence of alcohol." The definition of "under the influence of alco-

hol" did not require similar refinement; the only purpose of that instruction was to define the phrase, and any mention of driving would have been irrelevant and possibly misleading. The trial court did not err in using the instruction.

## IV

The defendant also argues that the jury received an improper instruction on the presumption of intoxication that arises by statute when a person's blood-alcohol concentration equals or exceeds .10. The instruction said:

> "If you find beyond a reasonable doubt that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, you shall presume that the defendant was under the influence of alcohol;
>
> However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of alcohol."

This instruction is IPI Criminal No. 23.06, with the phrase, "beyond a reasonable doubt," added and the phrase, "under the influence of alcohol," used in place of "under the influence of intoxicating liquor." The source of IPI Criminal No. 23.06 is section 11—501.2(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(b)), which sets forth several presumptions, including the one at issue here, based on different blood-alcohol concentrations.

The defendant argues first that the instruction should have told the jurors that his blood-alcohol concentration had to be .10 or more while he was driving, as opposed to some other, irrelevant time. In *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931, this court criticized a similar instruction for not specifically referring to driving. *Malik* said:

> "The tendered instruction also is of questionable accuracy in that it does not require the jury to find that the concentration of .10 or more alcohol occurred at the time the defendant was driving. Section 11—501.2(b) clearly states that the presumption (1) is to be offered in a trial of a criminal action '*** arising out of acts *alleged* to have been committed by any person while driving *** a vehicle,' (2) concerns the concentration of alcohol 'at the *time alleged*,' and (3) arises if the concentration of .10 or more existed 'at *that time*,' (Emphasis added.) Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(b)." (113 Ill. App. 3d

206, 211, 446 N.E.2d 931, 934-35.)

A reference to driving would keep the jury's attention properly focused on the time that the defendant was driving, rather than the time that he took the test. But as we noted in discussing the definition of "under the influence of alcohol," other instructions made clear that the intoxication had to be present while the defendant was engaged in driving, and those instructions would have cured any error in this regard.

The defendant also argues that the jury may have interpreted this instruction as expressing an unconstitutional presumption of intoxication. In raising this objection at trial the defendant offered instructions that would have permitted the jury to infer, as opposed to presume, his intoxication from the test results. We note at the outset the correct vocabulary that must be used here. An inference, occasionally referred to as a "permissive presumption," permits but does not require a jury to find that one fact is proved by the existence of another fact. In certain cases inferences may be commended to the jury's attention through instructions. (*County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) A presumption, occasionally referred to as a "mandatory presumption," requires the jury to find one fact upon proof of the existence of another fact, unless the opponent of the presumption introduces evidence to rebut it. The distinction between an inference and a presumption becomes apparent when the opponent fails to present rebutting evidence: the finder of fact may accept or reject the inference as it chooses, but it must take the presumption. In a civil action, an unrebutted presumption would require a directed verdict on that particular point. In a criminal case, however, a verdict of guilt may not be directed, for that would interfere with the jury's role. (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349.) Another concern implicated by the use of presumptions in criminal cases is the duty of the State to prove every element of an offense beyond a reasonable doubt (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068).

Resolution of this question must begin with the ways in which the jury reasonably could have interpreted the instruction, for those possible interpretations determine whether the instruction is constitutional. (*Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) In *Sandstrom*, a conviction for deliberate murder, the jury was instructed that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' " (442 U.S. 510, 512, 61 L. Ed. 2d 39, 43, 99 S. Ct. 2450, 2453.) Whether the defendant acted

with the requisite intent was the only issue at trial. The court found that the instruction was susceptible to two interpretations that would be unconstitutional: first, as stating the conclusion, which was irrebuttable, that the defendant acted with intent, or second, as shifting onto the defendant the burden of persuading the jury of the absence of intent. Both interpretations would violate due process, for they would relieve the State of its burden of proving every element of the offense beyond a reasonable doubt. Also, the conclusive interpretation would invade the fact-finding province of the jury, whose particular duty it is to provide an independent determination of guilt or innocence. *Sandstrom* said, then, that an instruction that can reasonably be interpreted as conclusive or persuasion-shifting with respect to an element of an offense is unconstitutional and cannot be used. This rule applies even though the instruction can also be interpreted in ways that are constitutional.

The first paragraph of the instruction at issue here commands the jury to presume intoxication from proof beyond a reasonable doubt of the specified blood-alcohol concentration; to a reasonable jury this command could have the effect either of shifting the burden of persuasion to the defendant (a "mandatory presumption") or, what is perhaps more likely, of conclusively establishing the defendant's intoxication (a "conclusive presumption"). Either interpretation violates *Sandstrom*. Furthermore, requiring proof beyond a reasonable doubt of the specified blood-alcohol concentration does not prevent the errors from arising, for that level of proof pertains only to the basic fact, not to the presumed fact. In contrast, the second paragraph of the instruction allows the jury to ignore the presumption and to consider other evidence instead. In *People v. Malik* (1983), 113 Ill. App. 3d 206, 211, 446 N.E.2d 931, 934, this court had before it a similar version of IPI Criminal No. 23.06 and said in *dictum* that "the contradiction between the two paragraphs raises at least a close question as to whether the jury might be so confused as to think the presumption was either mandatory or such as to place a burden on the defendant to prove his sobriety. *Sandstrom*."

■ Viewed separately, the two paragraphs are inconsistent: the apparent command of the first is contradicted in the second. But one visible basis for resolving the contradiction is provided by the sequence of the paragraphs, from which the jury here might reasonably have concluded that the second controlled simply because it was later and broader. Furthermore, whatever confusion arose from this instruction was dispelled by the other instructions. The jurors were given a thorough explanation of their independent role in weighing

the evidence and determining questions of fact. The jurors were also told that the defendant was presumed to be innocent of the charge, that the State had the burden of proving his guilt beyond a reasonable doubt, and that that burden remained with the State throughout the trial. Finally, the issues instruction said that the State had to prove beyond a reasonable doubt each of the propositions constituting the change. The instructions as a whole cured the error contained in that one paragraph in the instruction on the presumption.

Alternatively, we conclude that any error that came out of the instructions was harmless. In *Connecticut v. Johnson* (1983), 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969, the court discussed but was unable to decide whether the doctrine of harmless constitutional error set forth in *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, could be applied to *Sandstrom* errors, *i.e.*, jury instructions containing unconstitutional presumptions. The offending instructions in *Johnson* contained conclusive presumptions of intent. The Connecticut Supreme Court had reversed the convictions affected by the improper instructions without considering the prosecution's argument that the errors were harmless; the court apparently believed that *Sandstrom* errors could not be harmless. Four justices of the United States Supreme Court agreed with that view, and four disagreed; the ninth did not express an opinion on the subject, believing instead that the case should not have been accepted for review, and he simply joined the disposition that affirmed the judgment of the State court. Thus, *Johnson* did not render a binding decision on the question, and courts that previously considered whether *Sandstrom* errors were harmless have continued to do so. *E.g., Spencer v. Zant* (11th Cir. 1983), 715 F.2d 1562; *Engle v. Koehler* (6th Cir. 1983), 707 F.2d 241.

Harmless-error analysis is appropriate here. To be sure, some types of instructional error can never be harmless, and in those instances a new trial will always be necessary regardless of the strength of the evidence against the defendant. (*E.g., People v. Haywood* (1980), 82 Ill. 2d 540, 413 N.E.2d 410 (the defendant raised intoxication as a defense to a charge of murder, and the trial court gave the jury two instructions on the defense, one defining it correctly and the other defining it incorrectly); *People v. Stromblad* (1978), 74 Ill. 2d 35, 383 N.E.2d 969 (an obscenity prosecution in which the jury received an instruction defining "obscenity" too broadly); *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532 (a prosecution for attempted murder in which the defendant asserted self-defense; the jury received two different issues instructions, one correctly referring to

the State's burden of disproving the defense, and one omitting that proposition).) In those cases the court was concerned with both the fundamental nature of the error and the effect of the error on the jury's performance of its unique function. Misdefining an element may deprive the jury of an essential means of determining guilt or innocence. Giving separate hopelessly conflicting instructions may stymie the jury, for the jury has no means of deciding which instruction is correct and which is not.

These problems are not present here. As we have said, the erroneous first paragraph in the presumption instruction could not have tainted the entire charge to the jury. The error could not have hobbled the jury in carrying out its duties. The error was not so fundamental or basic that it must automatically warrant a new trial.

*Chapman* said that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.) We are satisfied beyond a reasonable doubt that whatever error occurred here was harmless. The defendant's own testimony showed that he consumed a fair amount of alcohol in the several hours preceding the accident. The police officers believed that the defendant was under the influence of alcohol when they took him from his car, and their later observations bore that out. The results of the breath test showed a relatively high blood-alcohol concentration. Thus, we conclude that any error emanating from the presumption instruction was harmless beyond a reasonable doubt.

Affirmed.

TRAPP, J., concurs.

JUSTICE GREEN, specially concurring:

Although, as I stated in *Malik*, I consider the question to be close, I agree with the majority that IPI Criminal No. 23.06, given in the context of the other instructions, could not reasonably have been interpreted by the jury to be mandatory or to shift the burden of persuasion. However, I am not prepared to hold that, if the instruction could reasonably have been so interpreted, the error was harmless beyond a reasonable doubt. Accordingly, I do not join in that portion of the opinion.

I am otherwise in agreement with the opinion and concur in the decision to affirm.