GUIDO JOHN PALLOTTINI AND JOAN M. PALLOTTINI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12958-86.     Filed March 30, 1988.

*Peter R. Stromer,* for the petitioners.
*Lisa J. Shuman,* for the respondent.

## OPINION

CHABOT, *Judge:** Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6653(b)[1] (fraud) and 6661 (substantial understatement of liability), as follows:

| | | Additions to tax[2] | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b) | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1981 | $107,666.81 | $53,833.40 | - - - | - - - | - - - |
| 1982 | 32,978.95 | - - - | $16,489.48 | 50 percent of the interest due on $32,978.95 | $3,297.90 |

The addition to tax under section 6661 for 1982 was determined by respondent as 10 percent of the $32,978.95 underpayment for that year.

---

*By order of the Chief Judge, this case was reassigned to Judge Herbert L. Chabot for opinion and decision.

[1] Unless indicated otherwise, references to sec. 6653 are to that section of the Internal Revenue Code as in effect for the years in issue; all other section references are to sections of the Internal Revenue Code of 1986 as in effect at the present time.

[2] By amended answer, respondent asserts additions to tax under paragraphs (1) and (2) of sec. 6653(a) (negligence, etc.) as alternatives to the fraud additions to tax determined in the notice of deficiency.

At trial, the parties announced a settlement of all issues presented in the case, except for the issue of the correct rate of the addition to tax under section 6661 for 1982. The parties and the Court agreed that this was a purely legal issue. Accordingly, neither side offered any evidence,[3] and the trial was concluded with the Court directing each side to file a brief on the single issue remaining.

Petitioners argue on brief that *no* addition to tax under section 6661 should apply. They argue that they acted in good faith in reliance upon substantial authority in reporting the items that led to the deficiencies that they conceded at trial and that, in any event, section 6661(a) is unconstitutionally vague. We reject petitioners' attempt to broaden the scope of the single issue remaining herein. By colloquy between the Court and counsel that took place when the instant case was submitted, which is part of the record herein, it was made clear that the only remaining issue was *not* whether section 6661 applied at all, but only what the correct *rate* was.[4] We accordingly hold that the sole issue now before us is the correct *rate* of the addition to tax under section 6661 for 1982 in the instant case.

Before we address that issue, we must first dispose of a procedural matter. Although respondent now seeks to apply a higher rate to determine the addition to tax for 1982

[3]The record establishes that when the petition was filed in the instant case, petitioners resided in Manassas, Virginia.

[4]The following discussion followed the parties' announcement of the specifics of their settlement:

THE COURT: All right. I congratulate the parties on reaching this very substantial settlement here, which only, as I see it, reserves one matter that the parties are in disagreement about, and that is a purely legal issue which I will ask the parties to brief for me. And this issue appears to arise under section 6661.

The statutory notice of deficiency in this case makes a determination that there should be an addition to tax of 10 percent for substantial [understatement] under section 6661. It is now my understanding, however, that Respondent alleges a percentage higher than 10 percent is applicable * * * allegedly as the result of an amendment of section 6661 by the 1986 Act. That matter is unresolved between the parties, but it seems to be a purely legal issue, and so I'm going to ask the parties to give me simultaneous single memorandum briefs in 75 days confined to that issue.

As to everything else, the parties have announced, and put into the transcript the issues in the cases are settled. Again, I congratulate [the] parties on this, and I think we're now just narrowed down to the single legal issue which is, as I understand it, the correct percentage rate of addition to tax under section 6661, which is applicable * * *

Have I stated the issue correctly, Mr. Stromer?

MR. STROMER: Yes, you have, Your Honor.

THE COURT: You agree that is the issue?

MS. SHUMAN: Yes, Your Honor.

under section 6661 than he applied in his notice of deficiency, respondent has never amended his pleadings to formally assert the higher rate. Ordinarily, this Court will not entertain an issue that has not been pleaded properly and, absent a clear and timely claim by respondent for an increased deficiency, will not enter a decision in an amount greater than was determined in the notice of deficiency. *Estate of Petschek v. Commissioner,* 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984); *Guaranty Trust Co. of New York, Executor v. Commissioner,* 31 B.T.A. 19, 23 (1934), affd. 76 F.2d 1010 (2d Cir. 1935). Section 6214(a),[5] however, grants this Court jurisdiction to determine a deficiency or addition to tax larger than that stated in the notice of deficiency, if respondent claims the increased amount "at or before the hearing or a rehearing."

When the instant case was called for trial, petitioners were fully informed that respondent was seeking an increased addition to tax under section 6661, and counsel for petitioners agreed that the rate of the addition to tax was the sole issue remaining to be decided by this Court. In these circumstances, we conclude that respondent has asserted a claim for the increased amount as required by section 6214(a), and that the issue has been tried by the consent of the parties within the meaning of Rule 41(b)(1), Tax Court Rules of Practice and Procedure.

Having disposed of the preliminary matters before us, we turn next to the legal issue presented. That issue is the proper rate of addition to tax that applies under section 6661(a).

Section 6661(a) was originally added to the Code by section 323(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 613. As it was originally enacted, the section provided for an addition to tax of 10 percent of the amount of any underpayment attributable to a substantial understatement of income tax

---

[5]SEC. 6214. DETERMINATIONS BY TAX COURT.

(a) JURISDICTION AS TO INCREASE OF DEFICIENCY, ADDITIONAL AMOUNTS, OR ADDITIONS TO THE TAX.—Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefore is asserted by the Secretary at or before the hearing or a rehearing.

liability, applicable to returns due after December 31, 1982 (sec. 323 of the act, 96 Stat. at 615).

In 1986, the Congress passed two acts, each of which amended section 6661(a). The Tax Reform Act of 1986 (hereinafter sometimes referred to as TRA 86), Pub. L. 99-514, 100 Stat. 2085, was passed by the House of Representatives on September 25, 1986, and by the Senate on September 27, 1986.[6] Section 1504, TRA 86 (100 Stat. at 2743), provides as follows:

SEC. 1504. INCREASE IN PENALTY FOR SUBSTANTIAL UNDER-STATEMENT OF LIABILITY.

(a) IN GENERAL.—Subsection (a) of section 6661 (relating to substantial understatement of liability) is amended by striking out "10 percent" and inserting in lieu thereof "20 percent".

(b) EFFECTIVE DATE.—The amendment made by this section shall apply to returns the due date for which (determined without regard to extensions) is after December 31, 1986.

The Omnibus Budget Reconciliation Act of 1986 (hereinafter sometimes referred to as OBRA 86), Pub. L. 99-509, 100 Stat. 1874, was passed by both the House of Representatives and the Senate on October 17, 1986.[7] Section 8002, OBRA 86 (100 Stat. at 1951), provides as follows:

SEC. 8002. INCREASE IN PENALTY FOR SUBSTANTIAL UNDER-STATEMENT OF LIABILITY.

(a) IN GENERAL.—Subsection (a) of section 6661 of the Internal Revenue Code of 1954 (relating to substantial understatement of liability) is amended to read as follows:

"(a) ADDITION TO TAX."—If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement."[8]

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to penalties assessed after the date of the enactment of this Act.

---

[6]These are the dates on which the Houses passed the report of the Conference Committee on H.R. 3838. Before it was sent to Conference, earlier versions of H.R. 3838 had been passed by the House of Representatives on Dec. 17, 1985, and by the Senate on June 24, 1986.

[7]This is the date on which both of the Houses passed the report of the Conference Committee on H.R. 5300. Before it was sent to Conference, earlier versions of H.R. 5300 had been passed by the House of Representatives on Sept. 24, 1986, and by the Senate on Sept. 25, 1986. The Senate passed other versions of OBRA 86 on Sept. 19, 1986 (S. 2706), and Sept. 27, 1986 (S. 2799).

[8]Sec. 6661(a) as thus revised is precisely the same as 6661(a) as originally enacted, except that "10 percent" in the 1982 Act has been replaced by "25 percent" in OBRA 86.

(c) REPEAL OF INCREASE IN PENALTY BY TAX REFORM ACT OF 1986.—
Section 1504 of the Tax Reform Act of 1986 (relating to increase in
penalty for substantial understatement of liability) is hereby repealed.

OBRA 86 was signed into law on October 21, 1986, and
TRA 86 was signed into law on October 22, 1986. Clearly,
the TRA 86 and OBRA 86 provisions conflict with each other.
TRA 86 increases the section 6661 rate to 20 percent. OBRA
86, enacted 1 day earlier, provides for a 25-percent rate and
states that it repeals the not-then-enacted TRA 86 provision.
Both provisions have been enacted; our task is to resolve
this conflict.

In *Watt v. Alaska,* 451 U.S. 259 (1981), the Supreme
Court was presented with a conflict between a provision in
a 1920 Federal statute and a provision in a 1964 Federal
statute. These provisions dealt with distribution of oil and
gas revenues from leases on certain categories of public
land. The later-enacted statute appeared on its face to
provide a vastly different answer than the earlier statute.[9]
Both the majority and the dissenters in the Supreme Court
started with the literal language of the two statutes. Both
groups agreed that the literal effect of the language of the
1964 statute was to provide a formula for distribution of
the lease revenues that was different from the formula
provided under the 1920 statute. 451 U.S. at 265, 277. The
majority stressed the maxim "repeals by implication are not
favored." 451 U.S. at 267. Both the majority and the
dissenters then proceeded to examine the legislative history
to see if the Congress meant for the later statute to
displace the earlier statute. The majority concluded that, in
the 1964 statute, the "Congress intended to work no change
in the pre-existing formula." 451 U.S. at 267. The dissenters
concluded that the Congress was aware of what it was
doing in the 1964 statute. 451 U.S. at 282. At worst, the
dissenters said, "nothing in the legislative history demon-
strates congressional intent different from that reflected in
the words of the statute." 451 U.S. at 283.

The lesson we take from both the majority and the
dissenters in *Watt v. Alaska, supra,* is that, in order to
resolve conflicts in enacted laws, we should first look to the

---

[9]By the time the Supreme Court spoke, more than $23 million was in an escrow account
awaiting the outcome of the case. *Watt v. Alaska,* 451 U.S. 259, 263 n. 6 (1981).

texts of the statutes themselves. Recourse may then be had to congressional intent, as may be deduced from the legislative history, to resolve any uncertainties that may remain after we have examined the statutes. When we apply this lesson to the instant case, the answer is clear.

In section 8002(c) of OBRA 86, the Congress recognized that the change in section 6661(a) made by OBRA 86 conflicted with the change in section 6661(a) made by TRA 86. In section 8002(c) of OBRA 86, the Congress directed that the OBRA 86 amendment is to control over the TRA 86 amendment. Nothing in the text of TRA 86 suggests that TRA 86 is to overrule OBRA 86. Thus, the language of the two statutes provides the answer. This language plainly states the order of priorities; on this point OBRA 86 controls over TRA 86. The rate of the addition to tax under section 6661(a) is 25 percent, not 10 percent or 20 percent.

The parties have not pointed us to, and we have not found, anything in the legislative history that would lead us to conclude that the Congress meant something different from what we glean from the words they put into the statutes. Compare *Rubin v. United States*, 449 U.S. 424, 430 (1981),[10] with *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 9-10 (1976). Since the answer in the instant case is clear, it is not necessary for us to determine whether we should pay more attention to the order in which the conflicting statutes were enacted or the order in which the conflicting statutes were passed or otherwise considered by the Congress.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, NIMS, PARKER, WHITAKER, COHEN, CLAPP, SWIFT, JACOBS, GERBER, PARR, WILLIAMS, WELLS, and WHALEN, *JJ.*, agree with the majority opinion.

---

[10]In *Rubin v. United States*, 449 U.S. 424, 430 (1981), the Supreme Court stated as follows:

When we find the terms of a statute unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.'" *TVA v. Hill*, 437 U.S. 153, 187, n. 33 (1978) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). Accord *Aaron v. SEC*, 446 U.S. 680, 695 (1980); *Ernst & Ernst v. Hochfelder, supra*, [425 U.S. 185 (1976)] at 214, n. 33. * * *

RUWE, *J.*, did not participate in the consideration of this case.

---

KÖRNER, *J.*, concurring: Although I agree that the majority has reached the proper result in this case, I am concerned that it has overlooked a longstanding and broadly accepted principle of statutory construction in reaching that result. That principle is that when, as here, two acts that contain conflicting and irreconcilable provisions of the last act passed by the legislature during the same legislative session, the provisions of the last act passed by the legislature control. *People v. Kramer*, 328 Ill. 512, 160 N.E. 60, 68 (1928); *People v. Fry*, 113 Ill. App. 3d 853, 447 N.E.2d 1065, 1069-1070 (1983); *Newbauer v. State*, 200 Ind. 118, 161 N.E. 826, 827 (1928); *State Property and Buildings Comm'n v. Hays*, 346 S.W.2d 3, 6 (Ky. 1961); *Blanchard v. Brown*, 388 So. 2d 865, 869 (La. App. 1980); *Adams County v. Smith*, 74 N.D. 621, 23 N.W.2d 873, 877 (1946); *Winslow v. Fleischner*, 112 Or. 23, 228 P. 101, 102 (1924); *Buttorff v. City of New York*, 268 Pa. 143, 110 A. 728, 728-729 (1920); *Department of Revenue and Taxation v. Shipley*, 579 P.2d 415, 417 (Wyo. 1978). The provisions of the last act passed by the legislature control regardless of the order in which the acts are signed into law. *People v. Mattes*, 396 Ill. 348, 71 N.E.2d 690, 693 (1947); *Central Hanover Bank & Trust Co. v. Boccia*, 244 A.D. 106, 278 N.Y.S. 737, 741 (1935).[1]

In my view, the majority would have placed its opinion on firmer legal ground had it relied on this principle rather than simply relying on legislative intent, which is often difficult to determine.

HAMBLEN and WRIGHT, *JJ.*, agree with this concurring opinion.

---

[1]Curiously, I have discovered no authority for the foregoing propositions in decisions of the Federal courts construing acts of Congress, nor indeed any Federal authority to the contrary. Based upon the wide acceptance of these principles of construction in the various States, however, as shown by the numerous cases cited above in the text, I can perceive no reason why such rules of statutory construction are not equally applicable at the Federal level.