MICHAEL R. McGUIRE AND CATHERINE L. MCGUIRE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McGuire v. Commissioner
Docket No. 2253-91
United States Tax Court
T.C. Memo 1992-542; 1992 Tax Ct. Memo LEXIS 563; 64 T.C.M. (CCH) 739; September 15, 1992, Filed *563 Decision will be entered under Rule 155. For Petitioners: Richard H. Tye. For Respondent: Russell A. Acree. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: Respondent determined deficiencies in petitioners' Federal income tax and an addition to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6661
1986
$    455
-
1987
592
-
1988
8,484
$ 2,121
Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years at issue, and the Rule reference is to the Tax Court Rules of Practice and Procedure. After concessions, [1] the issues for decision are: (1) Whether petitioners' cattle-raising activity was an activity engaged in for profit within the meaning of section 183; and (2) whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement of income tax for 1988. *564 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, supplemental stipulation of facts, and exhibits are incorporated herein by this reference. Petitioners resided in Hondo, Texas, at the time they filed their petition in this case. Petitioners timely filed their joint Federal income tax returns for 1986, 1987, and 1988. Beginning in 1976 through September 1991, Mr. McGuire operated a successful business named South Texas Filters which was engaged in selling and servicing filters (including air, oil, and hydraulic filters) for automatic and diesel equipment. Mr. McGuire had over 20 years of experience in the cattle industry. In 1962, at the age of 13, Mr. McGuire began assisting his stepfather, Carl Kurz (Mr. Kurz), in their family-run cattle business. Mr. McGuire helped Mr. Kurz in attending to the cattle by spraying the cattle, dehorning the cattle, and other related activity. In 1972, Mr. McGuire became a plant supervisor of the night shift at L&H Packing Co. Mr. McGuire was employed at the cattle slaughtering plant for 7 years where he had extensive contact with farmers, meat packers, and cattle buyers. One of his responsibilities *565 at L&H Packing Co. was to stay in contact with cattle buyers in the area. Mr. McGuire also discussed the cattle business with the farmers who sold their cattle to L&H Packing Co.
In 1984, petitioners purchased a 169-acre tract of land in Medina County, Texas (the farm), paying $ 50,000 in cash and financing the balance of $ 203,564 with a 10-year promissory note which accrued interest at 11 percent. The farm was undeveloped at the time of purchase and had little cattle-raising capability. In formulating a plan to enter into the cattle-raising business, Mr. McGuire sought the advice of Mr. Kurz, who had extensive background and experience in the cattle industry. In addition, Mr. McGuire sought the advice of Louie Johnston (Mr. Johnston) and associates from L&H Packing Co.
Although petitioners did not draft a formal cash-flow analysis or budget for their cattle-raising activity, the profitability had been investigated and projected through informal communications with Mr. Kurz, Mr. Johnson, and other cattlemen. Petitioners expected to make a profit from the cattle-raising activity within 5 to 6 years after beginning the operation. Initially, *566 petitioners planned to have a stocker-calf operation. A stocker-calf operation is one in which recently weaned calves are purchased, are fattened on pasture in order to gain 200 to 250 pounds, and are then sold for profit. Petitioners planned to rotate the cattle between fields. After the cattle grazed one field, they would be rotated to another field. After removal of the cattle, the previously grazed field would be irrigated to help rejuvenate and reestablish the grass. Mr. McGuire anticipated beginning with 150 head of cattle. When petitioners were unable to consummate the stocker-calf operation due to drought, a depressed cattle market, and economic conditions, they began a cow-calf operation. A cow-calf operation is one in which the cows are bred and the calves are sold. Mr. McGuire began the cow-calf operation to keep the pasture grazed until he could begin the stocker-calf operation. During 1985, petitioners began to improve the property. Mr. McGuire spent between 40 and 50 hours a week, devoting each entire weekend and every evening to preparing the land for the cattle-raising activity. Mr. McGuire expected to work full time in the activity after it was in full *567 production. By the middle of 1986, petitioners had built and placed in service fences, a hay barn, an equipment barn, and a cattle shed, and had placed six heifers on the property. During 1987, 15 additional heifers and a bull were added to the herd. In addition to sprigging the coastal field, Mr. McGuire prepared two additional fields. He planned to plant two of the remaining fields twice a year. However, due to the high cost of cattle and other economic constraints, Mr. McGuire's plans were never fully developed and he sold the acreage containing the two rear fields. Petitioners reported the following amounts as farm losses relating to their cattle-raising activity: Year
Amount of Reported Loss
1984
$ 3,714.28
1985
41,066.22
1986
37,289.00
1987
42,478.00
1988
39,669.00
1989
4,213.00
1990
39,128.00
During the years at issue, petitioners maintained a bank account at the Community National Bank under the name "M.C. Farm Account, Mike or Cathy McGuire". In addition, petitioners kept an inventory book on the cattle in which they recorded the acquisition/disposition information, immunization information, and whether a particular animal needed its horns removed. *568 In May 1991, the cattle book was destroyed in a fire at South Texas Filter's business location. Petitioners did not have a bookkeeper for the cattle activity. In 1988, petitioners moved their residence from San Antonio, Texas, to a mobile home located on the farm. Other than hunting deer on approximately one occasion, petitioners did not engage in any recreational activity on the farm. Nor did the farm contain any recreational facilities. OPINION Respondent contends that petitioners' cattle-raising activity was "not engaged in for profit" within the meaning of section 183. Consequently, respondent disallowed the losses reported on petitioners' 1986, 1987, and 1988 tax returns relating to the cattle-raising activity. Petitioners contend that they were engaged in the business with an actual and honest objective of making a profit. After consideration of all the relevant facts and circumstances and based on our observation of Mr. McGuire at trial, we conclude that petitioners engaged in their cattle-raising activity with the requisite profit objective. Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity *569 shall be allowed. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowed under these sections only when the taxpayer engaged in the activity with an actual and honest objective of making a profit. Beck v. Commissioner, 85 T.C. 557, 569 (1985); sec. 1.183-2(a), Income Tax Regs.
While a reasonable expectation of profit is not required, the facts and circumstances must indicate that the activity was entered into or continued with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). The existence of the requisite profit objective is a question of fact that must be determined based on the entire record. Dunn v. Commissioner, 70 T.C. 715 (1978), affd. 615 F.2d 578 (2d Cir. 1980); Benz v. Commissioner, 63 T.C. 375, 382 (1974). In resolving this factual question, greater weight is given to the *570 objective facts rather than to the taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs. The essential factor in determining whether an activity is engaged in for profit is the determination of whether the taxpayer had an actual and honest objective of realizing a profit from the activity, regardless of the reasonableness of the expectation of profit. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors bearing on whether an activity is engaged in for profit. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with *571 respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. No single factor, nor the existence of even a majority of the factors, is controlling; rather the facts and circumstances of the case remain the primary test. Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). In applying the above factors, the "courts have universally sought to ascertain the taxpayer's true intent." Dreicer v. Commissioner, supra at 645. Mr. McGuire was involved in the cattle industry for over 20 years: first, helping his stepfather care for his cattle herd, and then working for a cattle slaughtering plant. Looking at the record as a whole, we conclude that Mr. McGuire possessed the background and experience which would be necessary to be successful in the cattle-raising activity. In addition, we find Mr. McGuire made a reasonable inquiry before making the investment to see that it had profit potential. Although he did not consult independent experts, *572 he sought the advice of Mr. Kurz, friends, and other persons involved in the cattle business. Moreover, for 7 years, while employed at L&H Co., he had daily interaction with cattle buyers and farmers. His objective of making a profit was clearly expressed to family and friends. Mr. McGuire intended to retire from the filter business as soon as the cattle-raising activity was operating. Mr. McGuire did not expect to make a profit immediately, but intended to made a profit within approximately 5 to 6 years after beginning the operation. A taxpayer's expectation of profit need not be a reasonable one; it is sufficient if the taxpayer has an actual and honest objective of realizing a profit. Dreicer v. Commissioner, supra.In addition to the above objective facts, based on Mr. McGuire's credible and sincere testimony, we find that Mr. McGuire had an actual and honest objective of realizing a profit from the cattle-raising activity. Petitioners kept records of cattle purchases and sales during the years in issue. Although they did not institute a recordkeeping system or employ a bookkeeper, their records were sufficient to substantiate the cattle-related *573 income and expenses reported on their Schedule F. When it became clear to petitioners that they could not successfully maintain a stocker-calf operation, petitioners immediately began a cow-calf operation to keep the pastures grazed and to reduce their losses. Petitioners also demonstrated good business judgment in their attempts to minimize the costs of preparing the property for cattle. Petitioners purchased used machinery and organized friends and family to help with the manual labor. We conclude that petitioners carried on their cattle-raising activity in a businesslike manner. Mr. McGuire operated a successful business, South Texas Filters, for 16 years. In operating the cattle-raising activity, Mr. McGuire used good business practices similar to those he had developed for South Texas Filters. Although Mr. McGuire operated his filter business full time, he spent more than 40 hours per week planting pastures, rebuilding fences, building a barn, and building a pen. In addition, Mr. McGuire's stepfather and friend spent multiple hours assisting Mr. McGuire in his preparation. The fact that Mr. McGuire expended so much time and effort in preparing the property for cattle-raising *574 is a strong factor in leading us to conclude that petitioners had a profit objective. As of the date of trial, petitioners had engaged in the cattle-raising activity for approximately 7 years sustaining losses in each year. Although a long history of losses is an important criterion, it is clear that factor is not necessarily determinative of a lack of profit objective. See, e.g., Engdahl v. Commissioner, 72 T.C. 659, 669 (1979); Allen v. Commissioner, supra at 34-35. Some of the losses were due, at least in part, to circumstances beyond petitioners' control, i.e., drought, depressed cattle market, and economic conditions. As a result of economic constraints, both in the filter business and in the cattle industry, petitioners were unable to enter into the planned stocker-calf operation. Therefore, in an effort to utilize the farm to its highest immediate productivity, they purchased a small number of heifers and began a cow-calf operation. Accordingly, we conclude that, on the basis of the record as a whole, petitioners' string of losses is not a strong indication that petitioners did not engage in the cattle-raising activity with *575 a profit objective. Petitioners' income varied substantially during the years at issue. Petitioners could not rely on a steady stream of income from Mr. McGuire's filter business. The income from the filter business ranged from approximately $ 7,000 in losses for 1986, $ 1,000 in income for 1987, and $ 40,000 income for 1988. Mrs. McGuire reported approximately $ 12,000 of income from her teaching position in each year at issue. Petitioners were not wealthy and did not lead a lavish lifestyle. Their modest income is inconsistent with respondent's contention that the cattle-raising activity was merely a hobby of petitioners. Thus, we conclude that petitioners' financial status for the years in issue is inconclusive in determining their profit objective. Finally, it is important to note that Mr. McGuire's experiences in attempting to operate the cattle-raising activity consisted of long hours of grueling manual labor. The work done by Mr. McGuire did not have the characteristics of a pleasureful or recreational hobby. Moreover, with the exception of one deer hunt, petitioners did not use the farm for recreational purposes. Having determined that petitioners engaged in their *576 cattle-raising activity with an actual and honest objective of making a profit, the loss shown on petitioners' 1988 return relating to the cattle-raising activity is allowable under section 183. Accordingly, petitioners are not liable for the addition to tax under section 6661 for 1988 because there was not a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. By stipulation, petitioners conceded the correctness of the net operating loss adjustment for 1986 as shown on the notice of deficiency and the parties agreed to the following: (1) Petitioners omitted gross receipts in the amount of $ 6,791 from their Schedule C for 1986; (2) petitioners were not entitled to deduct $ 1,325 of the $ 5,483 travel and entertainment expenses and $ 2,648 of the $ 7,813 supplies expense claimed on their Schedule C for 1986; (3) petitioners omitted gross receipts in the amount of $ 3,799 from the Schedule C for 1987; and (4) petitioners overreported gross receipts in the amount of $ 632 on their Schedule C for 1988.↩